PENDLETON, President.
When Mr. Call, yesterday, entered so extensively into the proof, that there may be such things as determinable or subordinate fees in lands, a by-stander would have supposed, that the law under consideration had given some such fee to tenants in tail: but, the words of the act are, ‘ ‘ that such tenants in tail, shall be ipso facto seised, possessed, or entitled of, in, or to his estate or interest, in full absolute fee simple, in like manner as if the deed, will, act of Assembly, or other instrument, they hold under, had conveyed the same to them in fee simple; any words, limitations, or conditions, in the conveyance, to the contrary notwithstanding:” Words, too strong to admit of criticism or construction, that his fee was limited, or that all remainders depending on his estate-tail, were not destroyed; and, if it needed any aid in construction, that would be abundantly afforded in the saving clause, which excludes all claiming in réversion or remainder, from the benefit of that saving.
Washington, for the appellant.
If the act of 1776, does not contain words which expressly or necessarily defeat the rights of the remainder-man, the Court will not willingly adopt a construction which shall produce that effect. It is not necessary to deny the constitutionality of the act of 1776; and, yet, it is observable, that the law of 1748, paid great regard to the rights of the remainder-man: for, in the case of the ad quod damnum, notice was’ required,. and the private acts of Assembly not only gave a real instead of a fictitious recompence, but required notice also; so, that the business was not carried on in haste, but the whole merits of the question were heard. At the tinje of the Revolution, though, it was thought, necessary to unfetter estates; and, perhaps, it was politically wise to do so.
Ia m willing, therefore, that the act of 1776, should have the fullest effect that any reasonable man would require; that is to say, that it shall fully remove a 11 the inconveniences contemplated by the statute; but then, surely I may be allowed to ask, that it may not be carried further: Inasmuch, as the law is unjust in taking away the rights of the individual. For a remainder is an interest, which it is as unjust to take away without a cause, as if it were an estate in possession. My request, therefore, is not unreasonable, that the law may not be carried beyond the necessary construction of the statute.
It is a rule of construction, that a statute shall not have an equitable interpretation, in order to overthrow an estate, 6 Bac- Abr. 388, [ed. Gvñl. ]
The question is, what was the mischief, which the act of 1776, was intended to remedy ? The title and preamble *152 shew it, and prove that the great object of the Legislature, was defeat the right of the issue in tail. Because, it perpetuated property in the same family, tended to deceive fair traders, discouraged the holder from taking care of and improving the estate, and injured the morals of youth, by rendering them independent of and disobedient to their parents. These were the inconveniences.
*151 That the alienation or warranty of William Champe, could not give Hooe a better title than Champe himself had, was too clear to require the labor used to prove it. On these points, therefore, we do not, at present, desire to hear the defendant’s counsel; but, if the other counsel for the plaintiff wishes to add any observations on those which he thinks important, we are ready to hear him. If this is declined, the defendant’s counsel are desired to confine themselves to the question, whether the act is void, as being unconstitutional. *
*152 And what was the redress ?
It was by making tenant in tail, tenant in fee simple; which altered the course of descent, and broke up the channel per formam doni: Thereby, defeating the issue and abolishing the perpetuity.
. Now, if we satisfy all these objects of the law, why shall-not the plaintiff claim under the limitation to her, upon the happening of the events ? Since it involves none of the inconveniences stated in the preamble; and, does not tend to frustrate the effect and operation of the law.
My great ground of argument is, that the act of 1776, does not directly destroy remainders or defeat the issue ’ or reversioner; but, it does it indirectly only. There are" no words which expressly defeat either; it is only a consequence of law that does it, by the application of a legal principle. Thus, as to the issue; he claims per formam doni, under the statute de donis; but, the law has altered that- course of descent, and, therefore, he cannot claim any longer per formam doni. The same answer applies to a vested remainder-man or the reversioner. For, the act of 1776, having given the whole interest to tenant in tail, there is no remnant left for either of them.
Then as to contingent remainders.
If his title is by deed, then he claims a fee after a fee; which, by common law, he cannot do; and, therefore, the right is gone, although the contingency happens.
If by will; and, the limitation is to A. and his heirs, but if he dies without issue, then over; here, he in the remainder, cannot claim it as a remainder either, because, it is a fee after a fee in this case also. Neither can he claim it by executory devise, because it is upon too remote a contingency.
But, suppose the devise be to A. and the heirs of his body; and, if he die without issue living B., that the remainder should be to B. in fee. Here, B. might take by way of executory devise; for, it is within a life in being.
Suppose the will here had given a fee, with a limitation over on this contingency, it would have been good. I contend then, that it is equally so now.
*153 But, I shall be told that no such inference can be drawn; for, that the will in this case does not give a fee, which I admit, but the act-of 1776, does; and then, why shall not the limitation over take effect?
If the act had said, that “all remainders should be barred,” it might have been a different thing; but it has not said so, and the only objection to what I contend for, is the legal consequence arising from the law, which does not apply, where the contingency is to happen within a reasonable time; for, the docking the remainder, in sucha case, is not a necessary consequence growing out of the law.
The contingency here, is, if the sons shall die without issue; then, after the death of the mother, to the daughters who shall be living; which event has happened, and it was within a reasonable time, that is to say, within lives in being, so that the candles were all lighted up at once. In short, it is the case of Pells v. Brown, Cro. Jac. 590. For, if you convert the fee tail into a fee simple, it is the limitation of a fee, upon a fee by devise. The words of the act are, that tenant in tail shall stand seised in fee simple, in like manner as if the will had conveyed a fee simple to him. Suppose, then, the will had given a fee to William Champe, the contingency on which the limitation over was to take effect, would have been within a reasonable time; and, consequently, the limitation would have taken effect. But, by the statute, he is to be seised as if the will had given him a fee simple; and, therefore, it must clearly follow, that, notwithstanding the act, the limitation over is good.
Take a view of consequences.
Suppose a will to be made after the act of 1776: it must be construed in the same manner as this; for, the act includes future as well as prior wills. Then, let one man make a will before, and the other after the act, the limitation over in the last would be clearly good; because the first devise would be a fee, and then the limitation over would be a fee upon a fee, to take effect within a reasonable time; for the act of Assembly changes the force and meaning of the words, which formerly signified a fee tail, and makes them signify a fee simple. But, as I said before, a will after, and a will before the act, are both to be construed in the same manner; and, therefore, if in the case of a will after the act, the limitation over would be good, so will it be likewise in a case before the act.
*154 The present case, therefore, is no more than a limitation one *a ^ee5 ant^ ^ he dies without issue living the testator’s daughter, then to her in fee; which would be clearly a good limitation.
Suppose such a limitation for payment of debts, or the advancement of children, the Court would not decide against it surely, but would rather labor to support it. 6 Bac. Abr.
In the cases of ad quod damnum, and private acts of Assembly, the Legislature cut off the remainder in express words; and the act of 1776, proceeded upon the idea of most remainders being destroyed, but did not include all. Such as this was either casus omissus, or intentionally omitted: and if so, the argument is with us.
Full and absolute fee simple is mere tautology; for fee simple, and absolute fee simple, mean the same thing; and, therefore, no argument is to be drawn from thence.
Nor is any inference to be drawn from the last words of the enacting clause, any more than from the usual words in statutes of any law, usage or custom to the contrary notwithstanding, which are nugatory, because the statute would be law without them.
The saving clause cannot affect my construction, because an exception never vests any estate, but the contrary. It is taking a smaller from a greater, and does not enlarge the enacting clause. 6 Bac. Abr. [381;] 19 Fin. 532.
It may, perhaps, be said, that this act resembles a fine and recovery in England; which, Mr. Pigott says, bars entails, because of the recompense; and Judge Welles, [in Martin v. Strachan,] 1 Wilson, 73, because it is a common assurance. But, as there was no recompense here, and as I have shewn that the act of Assembly does not contain any such destructive operation as the recovery does, they cannot be justly resembled to each other in respect of their effect upon the remainder.
Taltarum’s Case, in England, [12 Ed. 4, 146, pl. 16,] was laid hold on, by the Judges, as affording an opportunity of destroying estates tail; and when the Courts had once begun it, in order to support their favorite doctrine and to render estates alienable, they construed all estates contingent remainders which could be destroyed by fine and recutory devises: for, a contingent remainder may be decovery; but those which could not, were held to be exestroyed, but an executory devise cannot Fearne, on Rem. [306.] But, there is no occasion for that construe *155 tion at present, as no estates tail can be created hereafter; therefore, as it is a rule, that what was a contingent remainder in its origin, may, from subsequent circumstances, be turned into an executory devise, Fearne on Rem. [418, 419,] it will follow that, in the principal case, what was at first a contingent remainder, has, by subsequent circumstances, become an executory devise; and, therefore, the alteration in the preceding estate does not affect the case.
It may, perhaps, be said, that the act of 1776, after destroying the remainder, cannot give effect to it as an executory devise; but, I have shewn, that it does not destroy it, either by the words or by consequence; and, therefore, that objection can have no weight.
Wickham and Randolph, for the appellees.
It will be necessary for us, after what has passed, to make but very few observations upon the case before the Court. The act of 1776, has destroyed every species of remainder; for, the language is as effectual, for that purpose, as any that could be devised; and any addition would be but mere repetition. The words of the statute are full and absolute fee simple; which clearly shew the extent of the Legislative mind, and include every quality and property of any fee simple estate; which Judge Beackstone, in his Commentaries, says, is the strongest and highest estate.
But, the attempt is to turn the fee simple into a determinable fee; and the word absolute, in the statute, is said to be tautologous. Upon which, it may be remarked, 1st. That fee simple, according to Lord Coke’s definition, I Inst. 1, is more applicable to a general unlimited fee, than it is to a conditional fee. 2d. That lawyers use the word absolute, in contradistinction to determinable fee, 2 Black„ Com. 104, 109; Pow. on Dev- 237; and, therefore, no word was so proper, for the purpose of creating an unqualified fee. The saving clause, too, strongly marks the impression of the law-makers; and, indeed, the whole scope of the act shews a fixed determination in the Legislature, to unfetter the estate: which, is utterly inconsistent with the notion of a determinable fee. The enacting clause ought not to have mentioned reversions and remainders; for then, perhaps, there might have arisen some difficulties about the extent of the terms used; whereas, by the simple, plain and unequivocal declaration, that the tenant in *156 tail should stand seised of a pure and absolute estate in fee simple> all room for doubt is removed; and the tenant has a perfect and indefeasible estate in fee, freed from all manner of limitations and conditions.
But, it is said, that the words of .the statute do not include contingent interests in express terms; and, therefore, in the present instance, the remainder will take effect by way of executory devise. But, if the remainders were all destroyed; as we have already shewn, then it was unnecessary to have been more particular in the description; because, an executory devise cannot be limited on-an estate tail; and, therefore, it would have been a work of supererogation, to have said, that such interests should be barred.
Which, of itself, in a great measure, answers the argument, that the Court would avoid construing it a contingent remainder, lest the statute should destroy it. But, that argument is of little weight upon other grounds. For, the mere circumstance of its being liable to be destroyed, will not prevent the construction, that it is an estate of a particular kind; but, the Court will give it the fair construction, without regard to the consequences. Fearne on Rem. [306.] Particularly, when the object would only be to preserve a solitary case of no public utility; and which, the Legislature, if they had conceived any difficulty could have arisen concerning it, would certainly have provided for. Besides, it is not correct to say, that what was a remainder in its origin, can be turned into an executory devise, by matter ex post facto. The cases cited from Fearne, do not prove it; for, they were all cases, where the first devise became void in the testator’s own life-time; and, the remainder-man, therefore, took by way of executory devise. So, that in fact, the limitation never was a contingent remainder, after the will began to operate; and, consequently, the cases are not parallel. The words of the act, are more extensive in their operation, than the judgment in a fine and recovery in England; which, clearly would have destroyed the plaintiff’s interest. Spalding v. Spalding, Pow, on Dev. 225.
In short, the main design of the act of Assembly was, to destroy entails and all other conditional estates, which tended to a. perpetuity; and, therefore, the Court should adopt the construction, which will best effect that end: which is, by considering the remainders, and all other contingent interest as entirely barred.
*157 PENDLETON, President,
delivered the resolution of the Court as follows:
The statute de donis secured entailed estates to the issue and remainder-men, by declaring that the will of the donor in that respect should be observed, and that all conveyances made by tenants in tail, should be ipso facto void. The fine and recovery furnished means, by which the tenant in tail might defeat both if he chose it, or he might forbear, and leave his estate to the operation of the statute. Mr. Pigott, and the Judge, who contended with him, might, and any other gentleman may, amuse themselves with investigating the principles, upon which, that proceeding was adjudged to bar the issue in tail and remainder-men: It is sufficient to say, that it was adjudged by the Court, to have that effect, at an early period, and so became as much a law of that country as the statute itself.
Our ancestors brought hither with them, both laws as a rule of property; and, the fine and recovery might have been used here,, if the forms could be preserved, until the Legislature should interpose to prohibit them: And, this I find they did by an act passed in [Oci.] 1710, [c. 13, § 4, 3 Stat. Larg. 517,] reserving to the Assembly the sole power of docking entails. *
The exercise of this power was, by acts passed on each particular occasion. Which, may rather be viewed as a change of the lands on which the estate tail was to operate; than, as defeating that estate, and giving a real recompense for it, instead of the fictitious one, in the form of the fine and recovery. The old lands were vested in fee simple, and the new placed in the hands of the tenant to pass to his issue, and those claiming in remainder or reversion, as the others would have passed by the instrument creating the entail. This spirit in the Legislature, for preserving entails, is further manifested by an act passed in [Feb. ] 1727, [c. 11, § 12, 4 Stat. Larg. 225,] authorising the annexing slaves to lands to pass with them in tail, in possession, remainder or reversion, making the slaves, however, liable for the debts of the tenant in tail, for the time being. I believe it was in 1734, [Jlug. c. 6, § 6, 4 Stat. Larg. 400,] for I have not the law here, that the Legislature, judging as I suppose, that a small tract of land would not support and perpetuate a family, introduced the writ of ad quod damnum, for docking entails. The *158 writ did not defeat the entail, but was a previous enquiry ascertain the value, and whether it was a separate tract, not adjoining to other entailed lands of the tenants? If jury- found the value under 3001 sterling, and the other tract affirmatively, then a conveyance, particularly described, is declared to vest the estate in the bargainee in fee simple, and the issue, and those claiming in remainder and reversion, are declared to be barred. Prom thence, and from the language of the private acts, an inference is drawn, that where the Legislature intended to bar remainders, they did it by express words, which are not in the act of 1776. A review of these acts gives an impression, that in the opinion of the Assembly, a different language was proper, where a fee simple was vested by the act, and where it was to vest in consequence of a future conveyance, whether well or ill founded is immaterial.
In the former case, they barely vested the fee simple, without barring the issue or remainder-men expressly, only excepting them from the operation of the saving clause; in the other case, they expressly declare them barred. But, since it is admitted, that the issue and vested remainders are barred, in consequence of what is declared in the act of 1776, the question is, whether that consequence does not include the limitation under consideration, without the aid of the construction, against which this observation was applied.. Whether it does or not, I shall consider when I come to that act. - In the revised law of 1748, [5 S'tat. Larg. 414,] the prohibition of lines and recoveries, and permission of writs of ad quod damnum, were continued till the Revolution. That event having produced a new order of things, this great subject came before the Legislature in October, 1776, under a view of all its legal circumstances, from the common law and the statute de donis, down to that period.
The great subject of discussion was, whether they should restore the fine and recovery, which was objected to on account of its fictitious nature, and the trouble and expense attending it; but the principal objection was, that it would permit the tenants to continue what was considered as a mischief; and, that those who possessed the large estates, would have an inclination to continue them in their families. They, therefore, resolved to cut the Gordion knot at once, and, ipso facto, to vest the fee simple in those who then'had, or should in future have, an immediate beneficial interest; that is to say, an estate in fee-tail in possession, *159 or a remainder or reversion in tail, after estates for life or lesser estates, unfettering the estates of all future interests depending, in creation, upon those estates tail.
That this was the design of the act, is manifest, from the title and preamble: and the question is, do the words of the enacting clause effect their purpose, and defeat the plaintiff’s remainder?
1st. Rules of construction of statutes are given ns, but none of them prove, that where the words of a statute are plain and obvious, the Court can, by construction, restrain their operation. The rules prove the contrary.
2d. The revised law of 1785, [c. 62, 12 Stat. Larg. 156,] an(l 1792, [i?. C, c. 90,3 011 this subject referred to, which adds to the vesting in fee simple these words: ei The estate shall from that time, (that is from 1776,) and thence^forth, be discharged of the conditions annexed thereto by the common law, restraining alienations before the do-nee shall have issue; so, that the donees or persons in whom the conditional fees vested or shall vest, had and shall have, the same power over the estate, as if they were pure and absolute fees.” This, it was said, proved that the words of discharge are necessary, which, being omitted in the act of 1776, are here supplied, and the act so far amendatory; and in that view, must be prospective only, and not retrospective, according to former judgments of this Court: so, at least, I understood the application of those acts. I am of opinion, these acts make no alteration, but only express in other words, and those not so strong, what is in the former law. Conditional fees at common law, are estates tail under the statute, and these, the act of 1776, says, shall vest a full and absolute estate in fee simple. And what are the words of exclusion in the new acts, discharged of the condition annexed by the common law, to the conditional fee? The act of 1776, is, ec the fee shall vest in the tenant in tail, in the same manner as if it had been conveyed to him in fee simple, notwithstanding any words, conditions and limitations, to the contrary, in the instrument of conveyance.” If this be not effectually discharging the estate of those words, conditions and limitations, I own I am not able .to discover the difference.
3rd. But the gentleman said, that estates may yet be limited, to provide for contingencies in families; and of this there is no doubt. A parent may guard against an improvident child’s wasting his provision, by limiting his interest in, or power over it. He may give an estate for *160 life, and limit remainders over upon it; but how far he may S° in limiting estates for life, one after another, so as to effect a perpetuity, we leave to be decided, when a case shall come before the Court, in which the experiment shall have been made. At present, we can safely say, that whenever the conveyance gives an estate tail in lands, the act vests in that tenant an estate in fee simple.
But inconveniences are objected:
1st. A man ought to be allowed to provide for perpetuating estates in his family, one after another; but, this the act prohibits as injurious to society.
2nd. But he may, by these remainders, provide for paying his debts, and for younger children. A provision for either, by a remainder, to take effect after a general failure of issue, which, it is truly said, may not happen -in 1000 years, would be very unsatisfactory..
On the other side, we discover important inconvenience in the decision labored for. The act has been in operation 21 years; and we might suppose, and indeed know, that great numbers of tenants in tail have sold their estates to fair purchasers, without a doubt of the interest being absolute, and unfettered of these latent family provisions en-grafted on that estate tail. To subject these purchasers to be disturbed in favor of mere volunteers, would be, at least, a great evil. But, in this Court, the law is to guide.
Mr. Washington states a difference between a will made the day before, and one made the day after, the act of 1776, which we do not comprehend. That act makes no difference between estates created before or after.
These objections being removed, we come to the act etself, the words of which are so strong and explicit, that no comment could increase their force.
Wm. Champe was indisputably tenant in tail of these lands, at that period, which the act changes into a full and absolute fee simple. And what is the general aspect of Mr. Washington’s reasoning? The issue, who have the first and most important interest, are defeated; and a contingent remainder, which may never take effect, and which I call an estate in the clouds, is preserved. I believe it may be truly said, that no statute ever proceeded upon such a system. It only remains to consider Mr. Washing ton’s great fort, that this devise may be supported as an executory devise, consistent with William Champe’s having a full and absolute fee simple under the act; and, if he could have proved this, he would have succeeded. But this is not, and cannot be proved.
*161 Por, what is a fee simple? It includes an entire dominion over the property to sell, to give, or transmit to heirs general; and when an instrument has disposed of that to one, nothing remains to be given to others, or to descend.
The words full and absolute, used by the Legislature, the word pure, by Lord Coke, and pure and indefeasible inheritance, used by others, are epithets to distinguish fee simple from base and limited fees; unnecessarily, indeed, as fee simple alone would have the same effect. That an executory devise, under proper rules, may be limited upon a contingent fee, is proved; the cases go farther, however, and prove that a devise, in itself importing a fee simple, may admit of an executory devise afterwards. But by what operation? By changing the supposed fee simple into a contingent and limited fee, from apparent intention. There are no words or spirit in .the act, to admit of such an operation in the full and absolute fee simple which it vests in William Champe. So that, if this devise, which is a contingent remainder, and as such, barred by the act, could .be converted into an executory devise to some purposes, yet it cannot he so changed to avoid the act, nor have that effect. Upon the whole, we are clear and unanimous, that the defendants, under the conveyance from William Champe, have a good title; and affirm the judgment.*

[* See the remarks of Pendleton, J. in Elliott’s exr. v. Lyell, 3 Call, 287.]

[* The first act was passed Oct. 1705, e. 21, S Stat. Larg. 320.]

[*See Hill v. Burrow, 3 Call, 342 Tate v. Tally, 3 Call, 354; Eldridge v. Fisher, 1 H. & M. 559; Sydnor v. Sydnors, 2 Munf. 263; M'Clintic et al. v. Manns, 4 Munf. 328; Tidball v. Lupton, 1 Rand. 194 ; Kendall v. Eyre, 1 Rand. 288. And, act Feb, 1819, c. 99 § 25, R. C., which enacts that “Every estate in lands, which shall he limited by any deed hereafter [Jan. 1, 1820] made, or by the will of any person, who shall hereafter die, so that, as the law was on the seventh day of October, in the year of our Lord, one thousand seven hundred andseventy-sixjsuch estate would have been an estate tail, shall be deemed to be an estate in fee simple, in the same manner, as if it had been limited by those technical words which, at the common law, are appropriate to create an estate in fee simple; and every limitation upon such an estate, shall be held valid, if the same would be valid when limited upon an estate in fee simple, created by technical language as aforesaid.”]