Judge Cake:
On the 5th day of May, 1 801, Richard Goodrich, made his will, and died not long after. After giving his soul to God and his body to the earth, the will proceeds thus; “And with what temporal goods it hath pleased God to endow me, I do give and dispose thereof in the following manner. Imprimis, I give to my son William, my negroes, Robin, &c.” going on with a long list of slaves and other personal property, to him and his heirs forever. “Item, I give to my son Thaddeits Goodrich, my land I now live on, the lands called Pea Vine, and that called Campbell’s, and my negroes, old Sam,” &c. (naming a number of slaves, and various other kinds of personal property,) to him and his heirs forever, with this restriction; “if in case he should die without heir, the lands above-mentioned, to descend to my son William Goodrich, and the balance to be equally divided among my surviving children.” He then lends to his daughter Sarah Lañdsale, several negroes and six head of cattle, and at her death, gives them to her children Thomas and Nancy, to them *281 and their heirs forever. He lends also to his daughter Mary Harding, several negroes and six head of cattle, and at her death, gives them to her children Samuel and liebceca, to them and their heirs forever. The “ remaindor part” of hr, estate, after debts and funeral expenses paid, he gives, one half to William, with one third of the crop about to be made; the other half to Thaddeus, with two thirds of the crop about to be made; also the whole of his crop that he leaves at his death; and he appoints William, his sole executor.
Thaddeus entered on the lands devised to him (which are tho only subject of dispute) and died intestate and without issue, in September, 1816. The two daughters of the testator are dead. Ho left, it seems, but four children named in his will. On the death of Thaddeus, William took possession of the lands, under the will of his father.
The plaintiffs are tho descendants of the two daughters, and claim that Thaddeus took an estate tail in the lands, which the statute converted info a fee; and that they are entitled, as co-heirs with William, to the shares of their parents. The Chancellor decided that Thaddeus, under the will, took an estate tail, which the act of Assembly enlarged into a fee simple, and destroyed the estate in remainder limited to William; and directed a division. From this decree, the appeal is taken.
In order to adjust the rights of the parties, we must examine what estates Thaddeus and William would take, “as the law aforetime was,” and what is the operation of our acts of Assembly upon those estates. The words, “To Thaddeus and his heirs,” give him (taken by themselves) an express estate in fee. How are (hey affected by the subsequent part of the clause, and what does William take? At first view, it seemed to me, that as the law was in 1776, William would take a life-estale only; no words of inheritance being superadded in the devise to him; and upon this idea, I considered it a good executory devise to *282 him, limited upon the fee to Thaddeus; the contingency not being too remote, as it must happen, if at all, during ^e life of William. But here a serious difficulty occurred. This will was made in 1801. Our statute, dispensing with words of inheritance in conveyances and devises, went into operation in 1787. Under it, the devise to William, carried the fee, just as effectually as if it had been to him and his heirs; and this we must presume the testator to have known and intended. How then, could I say that it was an estate for life in William: that the testator so intended it; and that it was a good executory devise, because the contingency being not on indefinite failure of issue in Thaddeus, but a failure restricted to the life of William, was not too remote ? And yet how could I help saying this, if, in.my- consideration of these subjects, I must take the lex temporis of’76 for my sole guide, excluding from my view all the subsequent statutes ? And this seemed to be the language of the cases in this Court. Carter v. Tyler, 1 Call, 165; Tate v. Tally, 3 Call, 354; Hill v. Burrow, 3 Call, 342; Tidball v. Lupton, 1 Rand. 194, and others. From this awkward dilemma, I was delivered by discovering, on closer examination, that without the aid of our sta-' tute, the devise to William carried the fee. This is clear, both from the English cases and our own, especially the latter. In the construction of wills, the cardinal point, the polar star, is the intention of the testator; and this being clear, must be pursued, unless it be in violation of some fixed and settled rule. The feudal rule, that “where an estate was conveyed without limitation, a life-interest only passed,” was soon found unfriendly to the true constructiqn of wills; and the Courts were eager to catch at slight expressions taking the case out of the rule. Mr. Pendleton, in his admirable argument in Kennon v. M’ Roberts, 1 Wash. 96, has traced with a master’s hand, the progress of the Courts in their struggle for intention, against this “ rigid and unjust” rule of law. At first they went no further than to supply the word ‘ ‘ heirs, ” by words tantamount, *283 such as “to him and his assigns,” “to him and his seed,” “to him forever,” “to him and his,” &c.; but soon they went further, and made various other words answer their purpose. It was in this manner, (says Mr. Pendleton,) that tiie word estate was taken into the service, which, in its vulgar and common meaning, is descriptive only of the quality of things, as land, &c.; not of the interest in them; and this word they would transpose from the preamble of the will, to the devising clause, for the purpose of carrying the fee. Many casos are cited by the President to this effect, in Kennon v. M’ Iioberjs; and though that case was not decided on this point, the opinion was so convincing that it gave the law to the subsequent cases which have arisen in this Court. Thus in Davies v. Miller, 1 Call, 110, (Tate’s edition) the word estate in the introductory part of the will, was held to pass the fee. In Watson v. Powell, 3 Call, 265, the words “temporal estate,” had the same effect. The next case I shall notice, is Wyatt v. Sadler’s heirs, 1 Munf. 537, where the testator, in the preamble of his will, expresses himself thus;—“and as to what worldly goods it hath pleased God to give, I leave and bequeath as followeth.” In the next clause, he “wills and devises, that his wife should enjoy all his land during her life,” and after her decease, he “gives and bequeaths it to his two sons to be equally divided between them,” &c. The Court held that the words worldly goods, were as operative as worldly estate: that they meant all that the testator possessed in the world; and that the fee passed to the sons. In the case of Johnson v. Johnson, 1 Munf. 509, the Court go still further, and decide, that before our statute of ’85, a fee would pass by a will, without words of perpetuity, or any words equivalent, if it appeared from the whole will taken together, that such was the intention of the testator. Our case is precisely like that of Wyatt v. Sadler. “And with what temporal goods, it hath pleased God to endow me, I do give and dispose thereof, in manner following.” Then he gives the land to Thaddeus, and his heirs, forever, *284 with this restriction; “if in case he should die without heir, the lands above-mentioned, to descend to my son WilliamCan it be doubted, either upon reason or au^oritj^, that he meant to pass the fee to William? But as he had first given Thaddeus a fee, this would be mounting a fee upon a fee, which the law does not. tolerate. To effectuate the intention, therefore, we must suppose thai the words as applied to Thaddeus, “if in case he should die without heir” mean issue of his body, as he could not die without heir general, while William, or any of his issue remained; and thus we reduce the estate of Thaddeus to a fee tail, and make good the limitation to William as a re - mainder in fee. And if, after all this done to effectuate intention, the statute steps in and defeats it, by converting Thaddeus’s tail into a fee, we can only say it a lex scripta est.
I am for affirming the Chancellor’s decree.
Judge Cabell:
The real question in this case, as to the lands in controversy, is, whether Thaddeus Goodrich took an estate tail therein; for if the will gave him an estate tail, then it was converted, by the acts of Assembly of 1776 and 1785, into an estate,in fee simple, discharged from all limitations whatsoever, whether in the nature of a remainder or executory devise. Carter v. Tyler, 1 Call, 165.
If words of inheritance had been added to the limitation over to William Goodrich, this case would have been Sydnor v. Sydnor, 2 Munf. 263, over again; and this seemed to be admitted by Mr. Wickham. But the effect may be the same, in this respect, whether words of inheritance be added by the testator expressly, or are to be implied by a sound construction of his will; and that the testator intended, by the limitation over to his son William, to give him a fee simple, is clear to my mind, from the reasoning of the Court in Kennon v. M’Roberts, and from *285 the subsequent decisions referred to by Judge Carr. If this be so, then the previous devise to Thaddeus was, according to the case of Sydnor v. Sydnor, above referred to, and Hill v. Burrow, 3 Call, 343, and many British authorities that might be cited, nothing more than an estate tail; and consequently the decree of the Chancellor must be affirmed.
The President:
In the case of Kennon v. M’Roberts, 1 Wash. 96, the cases are ably collated by Judge Pendleton, in which, (yielding to the intention of the testator to give a fee, collected from other parts of the will) the feudal rule, that where an estate is conveyed without limitation, or words of inheritance, no more than a life estate will pass, was made to give way to the intention of the testator. The object was to widen the intention, instead of narrowing it in favor of the heir at law; and to remove the clogs upon the alienation of landed property. The motives which favoured the intention against the rule, are historically stated by him; and the particular cases in which the Courts, laying hold of equivalent expressions in the will, got clear of the rule, and finally pressed the word estate (as he says) into the service, and gave it a more extended sense, to make it comprehend, as well the thing, as the interest, the testator had in it. In successive cases in this Court, the intention of the 1 estator, collected from other parts of the will, has been made to control the feudal rule. In the case cited, the words were “ touching my temporal estate, my will and desire is,,? &c.; in the case before the Court, words of the same effect are used by the testator, indicating his intention to dispose of his whole estate. The words are, “with what temporal goods it has pleased God to endow me, I give and dispose thereof, in the following manner,” &c.; the force of which gives to William a fee simple, after the death of Thaddeus, without heirs. But without *286 the aid of these words, to manifest the intention of the testator to give him a fee, I think the words, “ shall descend to my son William,” sufficient. The word descend, imports an intention to give him such an estate as was de-scendable in its nature, not a life estate, but an inheritable one. So that in either view of the will, it was the intention of the testator to give -to William a fee, on the contingency stated. But as Thaddeus could not die without heirs, as long as William lived or had heirs, the limitation over to William on the event stated, must be considered as restraining the general words “ shall die without heirs,” to. the heirs of the body of Thaddeus, and his estate to a fee tail, which, by the operation of the act of 1776, docking entails, is again converted into a fee simple, by which the remainder to William is defeated; so that after labouring to give hiin a greater estate than a life estate, under the feudal rule, the act comes in and defeats both.
According to this construction of the will, the case is substantially the case of Sydnor v. Sydnor, 2 Munf. 263. In that case, the devise was to the brothers separately, and their heirs, with a limitation over of the parts of each, on either dying without heirs of the body, (which is implied in the case before the Court) equally to be divided between the survivors and their heirs. The only difference is, that in that case, the limitation over was after an express dying without heirs of the body; in this, an implied one. As in that case, the limitation over to the brothers was defeated by the act; so in this case, the act must have the same effect. As the act of 1785, can have no operation on this case, (inasmuch as it is not necessary to resort to it to supply words of inheritance in the limitation over to William,) I shall reserve my impressions of its construction to a more proper occasion for them.
The decree is therefore to be affirmed.