PENDLETON, President.
Delivered the resolution of the Court as follows:
The record is lengthy, made so by form, but the question is a short one; being wbat interest Winter Bray took in the slaves under the will of his father Charles Bray ?
Before we enter upon the merits, we will dispatch two small objections made by the appellant’s counsel. First, The bill claims partition of a tract of land between the plaintiff and the defendants James and Charles, and an account of the profits: The answer states, that they were always ready to make that partition; and, the decree of the County Court is, that the parties had made it, which was confirmed. The objection now is, that they ought to have decreed the profits till the partition; but, the Court over-rule the objection, presuming that the profits were given up or compensated for, on the compromise.
A second objection is founded upon a mistake in fact; for, the County Court, after dismissing the bill as to the slaves, decreed an account to be taken of the personal estate. Which part of the decree was suspended by an appeal to the High Court of Chancery; where the decree, as to the slaves, being confirmed, it was represented that the Chancellor had dismissed the bill, instead of remanding it to the County Court to have the other part of the decree carried into execution: whereas, the decree being an affirmance has the effect required.
We now come to the merits of the question between the parties, which depends upon the will of Charles Bray, the elder, dated February the 24th, 1772, wherein he makes this devise: “ I give and bequeath unto my son Winter Bray, one negro boy named Peter and a negro wench named Dinah and her increase to him and his heirs forever; but, in case my said son Winter, should die and leave no issue, then I give all the said ne *297 groes, herein before devised to my said son Winter, to my son Charles and to his heirs forever.” If Winter took the absolute property in these slaves under that devise, then the appellants are entitled to one-third part of them, and the decrees are erroneous: but, if his interest was contingent, depending upon the event of his leaving issue at the time of his death, then the remainder over to Charles was a good one, and the decrees are right.
It was argued by the appellant’s counsel, that the slaves were annexed to lands, and entailed under the § 12 of the act of Assembly, passed in [Feb.] 1727, [c. 11, 4 Slat,. Larg. 225,] respecting slaves; that Winter was seised and possessed of both at the time of the passing of the act of [Oct.] 1776, [c. 26, 9 Stat. Larg. 226,] which vested in him a fee simple in those devised to him, and put an end to Charles’s remainder. He was right in his law, if the facts had brought the case within the act of Assembly.
The clause empowers a man by deed or will, wherein lands shall be conveyed in tail, to annex slaves thereto, and declare they shall descend together; which shall be effectual to effect that purpose: or, if he devises or conveys lands in tail, and in the same instrument disposes of slaves with the like limitations as the land, this shall amount to a declaration of his intention to annex them, and they shall pass together accordingly.
It was admitted, that here was no declaration to bring the case under the first branch, but it was said that it came' under the second; since, although the limitations were not the same in terms, yet they had the same effect, both lands and slaves being devised in tail.
Without wasting time in a scrutiny of this argument, it happens, unfortunately for it, that no lands are devised to Winter at all, except in remainder upon the death of William, without issue; to which remainder, though it took no effect afterwards upon the contingencies happening, there can be no pretense for annexing his own slaves, which he took immediately upon his father’s death. Besides, if it were possible to connect them together, he held them under different limitations: That is to say, the lands to him and the heirs of his body, without any remainder over; the slaves to him and his heirs, and if he died and left no issue, remainder to Charles: very distinguishable in effect as well as in terms. This section of the act, therefore, being out of the question, the case depends upon the third section of the same act, which declares, that where slaves are the sub *298 ject of a sale, gift, or devise, the absolute property shall be transferred in the same manner as a chattel, and that no remainder of a slave shall be limited otherwise than the remainder of a chattel personal may be limited, by the rules of the common law. By this clause, slaves are placed in the predicament of other chattels; and, we are to enquire, whether by the decisions in England, such a devise as the present, applied to personals, would vest the absolute property in the first devisee, or support the devise over to Charles?
If we were to trace this subject, through the various cases in which it has been discussed, it would be tedious indeed, and, we presume, unnecessary. Some general principles, changing from time to time in the progress of the discussion, may be necessary to elucidate the ground of our decision. The original common law rule admitted of no division of interest in a chattel. A gift for ari hour was a gift forever, as the expression is; and this founded on the transient, mutable nature of the subject. The first case recollected, in which this rule was combatted, is Mathew Manning’s Case, reported by Lord Coke, [8 Co. 94,] which was a devise to one for life, with a remainder over. The Court had difficulty, but, at length, established the remainder, by transposing the devises: making it a devise of the property to the remainder-man, with a direction that the first taker should have the use for his life. The same thing was done afterwards, in Lampet’s Case, reported by the same author, [10 Co. 46.] Both .these cases were devises of terms for years, which were endeavored to be .distinguished from mere personals, by the stability of the subject; and it was not till long afterwards, I believe about the time of the restoration, that such remainders were allowed in the case of mere personals; and were confined, at first, to instances where the use only was devised to the first taker. This distinction, however, was soon exploded; and a devise of a personal thing, for a limited time, was construed to be of the use only, and the remainder supported.*
We shall state the progress no further; and only observe, decisions favorable to remainders gradually increased, till it came to the present rule, well known and established, that a limitation over upon a contingency, which must, at all events, happen at the end of a life, or lives in being, or *299 a reasonable number of years, is a good one and will entitie the remainder-man. If it be more remote, it will be void, and the.first devisee will take the absolute property.
It was said, by the appellants’ counsel, that where the first devise takes an estate-tail, the remainder over is void; and this is true. Since, the remainder being to take effect upon a general failure of issue, which may not happen in a long coui’se of time, the contingency is too remote, to bring the case within the rule before laid down.
The counsel then read several cases to prove, that if there be a devise of lands to one for life, or in fee, and, if he die without issue, remainder over, this would turn the first- estate for life, or in fee, into an estate-tail in the first devisee, by implication, in order to favor the'testator’s intention of preferring the issue, who could not otherwise take, to the remainder-man, who was not to succeed until the issue failed.
But here, is introduced the distinction between an express entaif in the devise of a personal thing, such as to A, and the heirs of his body, 8?c. and such a devise as, in the case of lands, would give an estate-tail by implication: Upon principle, the distinction seems clear; since the implication, made in the case of lands, to favor the intention, would be misapplied, if made use of to destroy that intention, in the case of personals.
In the case of Atkinson v. Hutcheson, 3 P. Wms. 258, Lord Talbot fully illustrates the distinction between the devise of an express entail and one raised by implication; as well as the natural meaning of the words, dying without issue. That case came near to the present; because the limitation over was upon any child’s dying, without leaving any issue. The case of Forth v. Chapman, cited in this case, is the very case before the Court; except that there, it was devised to the first devisee for life, with remainder over, if he died leaving no issue; and here, the devise to Winter, is to him and his heirs, and if he leave no issue, remainder to Charles; which, it is conceived, makes no difference. „
It is remarkable, that, in that case, the same devise comprehended lands as well as chattels; and yet the lands were adjudged to be entailed, and the personals not: But, as to them, the remainder was supported, in order to favor the testator’s intention; thereby clearly establishing the distinction, before laid down.
*300 In Pinbury v. Elkin, 1 P. Wms. 563, the words dying •without issue, were less restrained, to the death of the devisee, than in the present case, yet the devise was so confined; and the Chancellor more familiarly illustrates that to he the natural meaning of the words dying without issue. He also relies on the word then, as aiding the construction: If she die withqut issue, then, that is, at her death, remainder over. The same word is used by the testator here: If he leaves no issue, then Charles is to take.
It need only be added, that in the present devise, the remainder over to Charles, (which was clearly intended to take effect upon the death of Winter, without leaving issue living at the time of his death, and not upon a general failure of issue,) is good as an executory devise within the rule; and that the decrees of both Courts are right.
Decree affirmed.*

[* See Randall et al. v. Russell et al. 3 Meriv. 194.]

[* See Higgenbotham v. Rucker, 2 Call, 313; Royall v. Eppes, adm’r. 2 Munf. 479; Timberlake et ux. v. Graves, 6 Munf. 174; Greshams v. Gresham et al. 6 Munf. 187; Cordle's adm'r. v. Cordle's ex'r. 6 Munf. 455; Didlake v. Hooper, 1 Gilmer, 109; Williamson v. Ledbetter et al. 2 Munf. 521. And see act Feb. 24, 1819, c. 99, § 26,1 R. C. p. 369, which provides, that “ every contingent limitation in any deed or will, made to depend upon the dying of any peison without heirs, or heirs of the body, or without issue, or issue of the body, or without children, or offspring, or descendant, or other relative, shall be held and interpreted a limitation to take effect when such person shall die, not having such heir, or issue, or child, or offspring, or descendant, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation he otherwise expressly and plainly declared on the face of the deed or will creating it.”]