ROANE, Judge.
This is an action of detinue for slaves, brought by the appellee against the appellant, and the question of his title arises under a deed of gift by Thomas Walton, of the 27th of March, 1758, which is stated at large in the special verdict.
Before I go particularly into the construction of that deed, I will give my ideas as to a preliminary point which was made, and state some general principles which I think must govern in the decision of this case.
It was in the first place objected, that a limitation of slaves by way of remainder, after an estate for life, was not good by deed. The answer to this is, that our act of Assembly has put slaves in this respect on.the same footing with chattels personal, by the common law; and, without referring to other authorities, Judge Blackstone, in stating the modern doctrines on this subject as relative to chattels personal, has a passage to this effect: “ Formerly, there could be no remainder of a chattel personal, by the rules of the common law; but it is now otherwise: And, therefore, if a man by a deed or will, limits his books or furniture to A. for life, remainder to B., it is good.” 2 Black. Com. 398.
Considering this broad objection then, as entirely out. of our way, I will state it as a general rule, that whatever words would in the disposition of real estate give an express estate tail, or such estate by implication, will, in the disposition of a chattel real or personal, carry the whole interest, with an exception, however, if from any expression it appears that the heirs or issue were intended to take as purchasers. This rule is laid down in 2 Fonbl. Treat. Eq. 81, [78 note (t) 2 Am. ed.; and see Dunn et ux. v. Bray, 1 Call, 338,] and is supported by the authorities there cited, as far as I have made myself acquainted with them.
Whether that general rule, or its exception, will govern the present case, I shall presently enquire.
It has been objected, that the exception from this rule, arising from intention, has been confined to marriage settlements or wills only. But, this objection is over-ruled *49 by Lord Hardwickk, in Hodgeson et al. v. Bussey, 2 Atk. 42. He states the case of Lisle & Gray, [2 T. Jones 114; 2 Lev. 233,*] as a full answer to that objection, and says, “ it is not the consideration of its being a conveyance on marriage, or on any other account; but, the. intention of the parties appearing on the deed, that always governs the Court in constructions;” and, according to this principie, a decision was made on a voluntary deed in the principal case.
That case, it is true, was the case of a term for years; hut, I know of no principle or authority, which, in this respect, distinguishes chattels personal therefrom. Indeed, in the case of Beauclerk v. Dormer, 2 Atk. 314, it is said, by the same Chancellor, that “it would be of very-mischievous consequence, and introduce confusion, if the Court should admit of a distinction between chattels personal and chattels real.”
Nor can any difficulty arise in the application of any case I may cite in this cause, from the consideration that such cases are by way of trust; for, it is clearly held in Garth v. Baldwin, 2 Ves. sen. 655, “ that in limitations of a trust of either real or personal estate, to be determined in this Court, (the Chancery,) the construction ought to be made according to the construction of the legal estate.”
Hearing these principles in mind, I will .state the substance of the deed before referred to, and the questions ari - sing thereupon.
The deed is as follows: The doner, In consideration of the natural love and affection which ho bears unto the persons therein named, and for other causes, gives tí) his daughter Patty, wife of Edward, Mosby, “ the use of two negro slaves during her natural life, viz: a boy named Jlbram and a girl named Lucy. To have, &e., the said slaves unto the said Pally, to the only use and behoof of the said Patty, during her natural life, and after her death, I give and grant the said slaves, with their increa.se, to the heirs of her body, to the only proper use and be-hoof of such heirs, their executors, administrators or assigns; and in case, my said daughter Patty should die without heir of her body, in that ease I give and grant the said slaves, with their increase, to my son Robert Walton, his executors, administrators or assigns, to the *50 only proper use and behoof of him, the said Robert Walton his executors, administrators or assigns; I, the said Thomas Walton, all and singular the aforesaid slaves to my said daughter Patty, the heirs of her body, or my said son Robert, or to either of them, in manner and form as above is particularly specified, as the case may happen, shall and will warrant and forever defend.” Upon this deed, and the finding of the jury, that the appellee, Hezekiah Mosby, is the eldest son and heir at law of his father, 'Edward Mosby, (by the grantee Patty,) it is to be decided whether the absolute title of the original slave Lucy, vested in the said Patty? Or, whether the remainder, (after her death,) was vested in the said Hezehiah, when he should be born ? In other words, whether the general rule, or the exception before stated, shall prevail ? Or, whether the words “heirs of her body,” in the said deed, shall be construed to be words of limitation or of purchase ?
I should be unwilling to embark, without the aid of precedents, into the vague and extensive field of intention, especially in a deed; but, if principles of decision, applicable to this case, have grown into a rule of property, then that reluctance and the danger on which it is founded, will consequently cease.
I consider that not only principles of decision are to be found in many cases to support my opinion, that these words are words of purchase in the present instance, hut that the case of Hodgeson et al. v. Bussey, 2 Atk. 89, is substantially a direct authority.
That case was a conveyance in trust of a term, to permit the wife to receive the rents during the term, if she shotild so long live; and afterwards to the husband, if he so long live; and after his death, in trust for the heirs of the wife, by the husband begotten, “ their heirs, executors, administrators and assignsThe Chancellor construed the words heirs of the body, to be words of purchase; and said, that the general run of cases makes this plain, that notwithstanding they seem to sound like words of limitation, yet, upon circumstances, and the intention of parties, they may be construed words of purchase, and descriptive of the person who is to take; and further, that words of limitation are not properly used in terms for years.
It is true, in the principal case, the Chancellor seems to lay stress upon the words, if she so long live, as being *51 tantamount to the words, for life only; and does not deeide it expressly and exclusively upon the words executors, administrators and, assigns. But, in Theebridge v. Kilburne, 2 Ves. sen., 233, [237,] the same Chancellor says, “the governing reason in Hodgeson et al. v. Bussey, was, that the limitation was to the heirs of the body, their executors, administrators andussigns; which words differed from Stanley v. Lee,— and made that a plain case, because there was no eye of an estate tail, as Lord 11a lio says; for, it could not go from one heir of the body and his executors and administrators, to another and his executors and administrators, and, therefore, must vest in the first person taking, and his executors and administrators, the same as if it had been said: I give it after both their deceases, in trust for the eldest son begotten; if no son, then to a daughter, their executors, administrators and assigns.”
So again, in Garth v. Baldwin, [2 Ves. sen. 660,] the same Chancellor says, “in Hodgeson et al. v. Bussey, I held, adding the words executors, administrators and assigns, strong evidence of intent to give only a usufructuary interest for life, and to vest the property in the heirs of the body. ”
These are explained to be the grounds of the decision in Hodgeson v. Bussey, and they appear to me to be very strong and applicable to the case before us, which lias the same expression, such heirs, their executors, administrators and assigns.
I should lay no stress on the circumstance of the use of the negro being given to the daughter, standing singly. For, if thereupon was ingrafted a naked limitation to the heirs, the whole property would be vested in her, as much as if the negro itself had been given. This is abundantly proved by the case of Daw v. Pitt, [Fearne on Rem. 347, Tothill v. Pitt, 1 Maddock’s R. 488, Earl of Chatham v. Tothill et al. 7 Bro. P. C. 453, Toml, ed. S. C.;] there being no distinction between giving the use, profits or interest of money or goods, and giving the thing itself. But, perhaps under the spirit of the foregoing decision, it may be resorted to in this case, as auxiliary to other circumstances, to shew, that not the property, but the usufruct thereof was given to the daughter. I say, perhaps, for I have formed no final opinion on this point, nor is it the principal one on which my opinion is founded.
*52 This is my opinion on tlio principal question: And it remains now to be decided whether the eldest son (the appolice,) who at the time of his birth, and then came under the description in the deed, or all the children who at the time of the death of the daughter, fulfilled such description (being then the heirs of her body) are entitled ? And I consider the same case of Theebridge v. Kilburne, [2 Ves. sen. 233,] as a direct authority in favor of the eldest son. In that case it was said, in substance, that if there had been sufficient ground to construe the words to be words of purchase, it would vest, in the issue as soon os born; and in those cases where the words, heirs of the body, have been construed to mean issue, as words of purchase, it is never necessary that such issue should survive the first taker, so as to be in strictness heir; and, that there was great reason for it; for, if a daughter had been born and married, there was no reason why she should not be advanced by this in the life of her mother, unless there had been something to restrain it to heirs of the body at the time of the death.
The same doctrine is also, I think, to be found in the before-mentioned case of Hodgeson et al. v. Bussey, 3 Atk. 89.
I am, therefore, of opinion, that the appellee had at the time of his birth, a vested remainder in these slaves: That it is not incumbent on him to shew himself to have been heir of the body of Batty at the time of her death; and, that consequently, he is entitled to recover.
I have said nothing in this case (as being unnecessary, however plain) upon the ultimate remainder to Robert Walton. There is one view, however, in which it is material to be considered, as fortifying the construction I have given the deed.
The deed states as a consideration, the natural love and affection, he bore to the persons after-named, of whom Robert Walton was one. He was also an object of the donee’s bounty. In a case of doubtful construction then, that sense shall be preferred, which will reserve to him some interest. That can only bo, by construing the words to be words of purchase; in which event, if no issue had been born, he would have been entitled: Whereas by construing them to be words of limitation, the whole interest would vest in the daughter, and he would be in every event excluded. .
T am for affirming the jugment of the District Court.
*53 LYONS, Judge.
Although it be a rule that in the con'.traction of writings, the intention of the parties ought to prevail, yet that role does not extend so far as to overturn the established interpretation which has, for ages, been put upon certain expressions; the legal effect; of which, in particular instruments, bar. been constantly held to convey the absolute properly. In the present, ease, the gift, is to the use of the daughter for life, and after her death, to the heirs of her body, their executors, administrators and assigns; and in case she died without heir of her body, remainder over. These words would have given an estate tail to the daughter in lands, and therefore they gave the absolute property in slaves. 2 Fonbl. Treat. Eq. 81; 2 Fearne on Rem. 363. I say, they would have created an estate tail in land», because it is a rule, that wherever the ancestor tabes an estate for life, with a limitation in the same instrument, to the heir, the heir takes by descent, and not by purchase. [Shelley’s Case,] 1 Co. 104; [King v. Melling,] 2 Lev. 59; Raym. 234; 2 Black. Com. 332; and this whether the estate conveyed be a trust or legal estate. Raym. 330; 2 Fonbl. Treat. Eq. 395; Ibid. 82, 50; 1 Ventr. 373. The reason of which, is very well explained by Judge Blackstone, in his argument in the case of Perrin v. Blake; where, after remarking upon ihe objects of the rule, he proceeds to shew that it is, in effect, hut the common Imiitsiion of an estate of inheritance. His words are, is the whole of this rule amounts to no more than what happens every day in the creation of an estate in foe or in tail, by a gift to A. and to his heirs forever, or to A', and to the heirs of his body begotten. The first words (lo >(/.) create an estate for tile. The latter {to his heirs or the heirs of his body) create a remainder in fee, or in tail; which the low to prevent an abeyance, refers to, and vests in the ancestor himself; who is thus tenant for life, with an immediate remainder in fee or in tail: And then by the conjunction of the two estates, or the merger of the less in the greater, he becomes tenant in fee or tenant in tail in possession.” Harg. Law Tracts, 500. This, then, being the clear result in law of such limitations, it cannot be departed from in the construction of a deed, which does not admit of the same latitude as wills. [Wharton et al. v. Gresham et al.] 2 Wm. Blacks. Rep. 1084; [Bagshaw v. Spencer,] 1 Ves. sen. 151; [Doe dem. Cooper v. Collis,] 4 T. R. 299; [Stratton v. Best,] 2 Bro. C. C. 233; [Knight v. Ellis,] *54 Ibid. 578; [Atwaters v. Birt,] Cro. Eliz. 856; [Rigden v. Villier,] 2 Ves. sen. 257; 3 Atk. 731, S. C.; Fearne on Rem. 298; 2 Fonbl. Treat. Eq. 88. In all which cases the distinction between wills and deeds will be found expressly marked; and, that there is an indulgence, contrary to the rules of limitation in conveyances at common law, allowed to the former, which does not take place in the latter. The case of Higgenbotham v. Rucker, 2 Call, 313, is not like this; because, that was decided upon the particular expressions, which the Court thought tied up the words, die without issue, to the life-time of the daughter: But, here was a limitation bestowing the whole interest, without any thing to restrain the legal operation of the words.
The act of Assembly passed in Feb. 1727, Old Ed. Laws, 81, [c. 11, § 3, 4 Stat. Larg. 223,] makes no difference, for the words “ no remainder of any slave or slaves shall or may be limited by any deed, or the last will and testament in writing, of any person whatsoever, otherwise than the remainder of a chattel personal, by the rules of-the common law, can or may be limited,” should be taken according to the subject matter, that is to say, they ought not to bo carried further than to mean, that when the limitation is by deed, it should be according to the rules of law, with respect to deeds; and, when by will, to the rules of law with respect to wills. I consider the case, therefore, as standing upon the general rules established by law for the interpretation of deeds: And, taking that for the standard, the case in effect, is no more than a gift to the daughter for life, with remainder, after her death, to the heirs of her body; which, in the case ofpex-sonal property, conveys the whole interest. The declax'ation of the use does not affect the case; for, such a declaration, even in a will, has not been allowed to control the legal operation of the words. Goodwyn v. Taylor, 2 Wash. [74;] and much less ought it in a deed: Particularly in the present case, where the limitatiorx of the use is so connected with that of the property, as to x’ender it attendant on, and subject to pi’ecisely the same limitations, and measure of interest, as the property itself is.
I am, therefore, of opixxion, that the daughter took the absolute property; and, that the judgment of the District Coux't ought to be affirmed.
*55 PENDLETON, President.
The deed of Thomas Walton, dated March 37th, 1758, conveys to his daughter Patty Mosby, wife of Edward, the use of two tiegroes, Lucy and Jibrani, during her natural life, and then proceeds thus, after her death, I give and grant the slaves and their increase to the heirs of her body, to the use and behoof of s'uch heirs, their executors, administrators or assigns; and in case my said daughter Patty should die, without heir of her body, in that case I give and grant the said slaves and their increase to my son Robert, his executors, administrators and assigns. The daughter Patty had then one child. Edward Mosby, possessed of the slaves, died intestate in 1769, leaving issue by his wife Patty, who survived him, ILesekiah the plaintiff, (who was the eldest son, and heir at law) the wives of the two defendants Walton and Bradley, and two other children. On a division of Mosby’s estate, Lucy was allotted to Patty for her dower, under a decree of Cumberland, County Court, and was held by her, as her part of the estate of Edward, till her death in 1794; when Lucy with eight children were divided between the above-mentioned five children of Patty; the slaves in dispute, being the parts allotted to the wives of the defendants respectively. This division was made without the consent of the plaintiff, but an equal share was allotted him; which he took possession of, and has kept ever since. The judgment in the District Court is for the plaintiff.
If Patty took an estate for life, and the remainder to the heirs of her body, be a legal one, and descriptive of all her children, then the law is for the defendants, and the judgment is to be reversed. If, on the contrary, the limitation to the heirs of her body cannot take effect, as a remainder, but enlarges her estate for life into an estate tail, then the property vested in her; and of course in her husband, who had possession: Or, if the remainder be a good one, but was descriptive of her eldest son as heir of her body, in either caso the judgment in favour of the plaintiff is right.
An objection was made by the counsel, that where ex-ecutory devises of personals had been extended liberally in England, it was in consequence of the latitude allowed in the construction of wills, to favour the intention of testa tors, which latitude was not. permitted in construing deeds; and he seemed to doubt., whether an executory interest in personals, could be created by deed, in England. I am in- *56 dined to think, that if any instance of such deeds occur there, they are rare, except in the case of marriage, or other family settlements; of which the books abound with instances, and we are told, without contradiction, that limitations of chattel interests in such settlements and executory devises, stand on the same ground in construction. In this country, deeds for slaves are common; and for this reason, I presume, that the Legislature, in the act of 1727, have placed deeds and wills upon the same fooling in respect to the limitations now under consideration; referring to the standard of the English adjudications, in respect to executory devises and limitations in deeds of trust. It is to be lamented, that the adjudications were not less fluctuating than they appear to have been, and that the liberal progress to favour mens’ intentions, which had taken place from Matthew Manning's Case, [8 Co. 187,] till lately, should seem to be arrested by some late decisions, and an attempt made to carry us back to the old rigid law upon the subject. However, 1 do not think this Court bound to follow them in their instability, and by that means to keep afloat the principles upon which this great branch of our property depends. Although the pride of perpetuating families by entails, is justly reprobated by our new order of things, and never could, with propriety, be gratified in the disposition of chattels; yet, to restrain parents from guarding against the experienced improvidence of a child, while he is making provision for its immediate subsistence, by restraining his power of squandering the property, and securing that property to pass to the descendants of that child, would be an extreme, inconvenient to individuals and to society, by damping the spirit of industry. A medium between these two extremes, is produced by the doctrine of executory devises and limitations in deeds of the same sort; the principles of which, permitting them when they are to take effect at the end of a life or lives in being, or a short time after, and disappointing all attempts to perpetuate personals in the family, equally avoids both those extremes. That a limitation- in the case of chattels, creating an estate tail, is void, has never been doubted; but the doctrine that there is a distinction between words, which create an express entail, and such as create an estate tail in lands by implication and construction to favor the intention to provide for the issue, and that the latter ought not to be applied to the case of personals to destroy that intention, is founded upon sound reasoning; which, in my *57 opinion, never has been, nor can be refuted. In the case Lampley v. Brown, 3 Atk. 398, there was a limitation of a term to A. and to her issue, which Lord H ardwxoixe said, would vest the whole term in A. if the devise had rested there; but the addition of the subsequent words, and if *H.~ die a,nd leave, no issue, related to any child living at A’s death, and shewed that such was to take after . A’s death; and, consequently, that the word issue, there, was to be considered as a word of purchase. In Fearne on Rem. 384, it is said, a devise of a term to A. for life, and afterwards to his issue, does not enlarge the estate to A. but after his death the whole vests in the issue. Fearne on Rem. 293, (after having considered the several eases in which the rule of Lord Coke, in Shelley’s Case, bad been adhered to or departed from, which cases and their principles he states to he of amphibious tendency, and to comprise the production of a question, the solution of which may , by professional gentlemen, bo truly termed the “ Hie labor,” the "Hoc Opus,” and to attempt it with precision is vain, until we can reduce all possible expressions or indications of intention, to certain classes or degrees of relative force, affording a standard scale, by which we might ascertain what degrees of express or implicative indications of intention, were above, and what were below the con-1,rolling index of Lord Coke’s rule,) refers to Judge, Bhackstone’s celebrated argument, in the case of Perrin v. Blake, is the best guide hi the solution of such questions. That Judge states four cases, in which the rule does not. apply, but heirs of the body are 1o be taken as words of purchase. Isi. Where no estate is given to the ancestor. 3d. Where no estate of inheritance is given to the heir. 3d. Where olher explanatory words are subjoined to the former. 4th. Where a new inheritance is engrafted on the heirs of the body; which is the present case. Fearne on Rem. 299, gives the reason of this control of the rule in a clear and sensible manner. If heirs of the body be words of limitation, changing the ancestor’s estate for life into a fee tail, the estate must continue to pass in succession in tail, through all future descendants; which is inconsistent with the new engrafted inheritance in fee simple, that reduces the words heir to designation of the person to lake at the death of the tenant for life, and makes the person, answering the description, the root of a new inheritance, the stock of a new descent. There is no difference between heir in the single number, and heirs; since one *58 and the siwic person takes in both instances, in the case of lands in England, the reason of which will be stated hereafter.
Upon these principles, I proceed to examine the deed under co7isideration. It gives the use, not the property, of the negroes to the daughter for life, and after (or at) her death, gives that property to the heirs of her body, their executors, administrators or assigns. The remainder to his son Robert, in case the daughter should die without heir of her body, seems unimportant, since the event did not happen, and it does not tend to alter the estates of the mother or her children; but may consist with both. There appears on the face of this deed no attempt at a pe7'petuity; since, upon the determination of the estate for life, the property was to vest, either in the children, if there were any, or if none, in Robert. But, if in the old cases, where the thing itself was devised for life with remainder over, it was construed to be a devise of the property to the remainder man, and that the tenant for life should have the use in the mean time; and if Lord Hardwicke, in the case of Hodgeson et al. v. Bussey, 2 Atk. 89, where a term was settled in trust for one for life, and, after her decease, in trust for the heirs of her body, their executors, administrators and assigns, held that the limitation to the heirs of the body, were words of purchase, and that the addition of the words executors, administrators and assigns, was strong evidence of the intent to give only an usufructuary interest for life, and to vest the property in the heirs of the body, surely this case,is much-stronger, where the use is expressly given for life, and the property first given to the heirs of the body, who are to be considered as the first takers, in whom the property is to vest absolutely, without any danger of a perpetuity. I have, therefore, no doubt, but that the remainder was a good one; and it only remains to consider who is to take by purchase under it, whether the eldest son, as heir of the body? or all the children equally? It seems to me that, if this limitation were of land, the words “ heirs of the body,” taken as words of purchase, would Carry the estate to the heir or eldest son; but being of personals, in which the children were equally to share, (and I consider the words heii's of the body, to mean children;) I am of opinion that they were all entitled to equal shares. In this, I am also influenced by another consideration, which would give the words the same effect in the case of lands. Heirs *59 of the body, when taken as words of limitation, are collectivo, comprehending all future successions of heirs; and, therefore, heirs, in the plural, refers to that succession, and does not require more than one to take at the same time: But why, when the heirs of the body are to take by purchase, as designated, it should bo confined to one child, when there are many, can only he accounted for from the influence of feudal principles, favorable to the rights of primogeniture, and the interest of the Barons to keep estates, as much as might bo, in one, hand. With the latter we happily have no concern: and since our system has abolished the preference of primogeniture, and called to succession all relations in the first and equal degree, our Courts ought, in construction, to apply all the rules favorable to heirs in England, to the heirs as here described; and not to one, in exclusion of the rest. This will be the rule in cases happening since the Revolution, and why not in those happening before, and decided on now? when it is to give words their natural meaning, as they arc commonly understood, and not a technical sense, of which people at large never heard. In Higgenbotham v. Rucker, 2 Call, 313, the jury say, the donor, by heirs of the body, meant children; they were plain men, interpreting the words of a plain man, in his donation, in the sense in which they are understood by all such men. To conclude: I read this deed as I have no doubt it was intended, “I give to my daughter the use of the negroes during her life, and at her death, I give the property in them to her children; and in case my said daughter should die without a, child, (without heir of her body in the singular number,) I give the slaves to my sou Robert, as his property.” So, that in all events the property was to vest, at the death of the wife, either in her children, if she left any, or if she left no child, then in the son Robert: This contingency, therefore, was not too remote to admit, of the limitation which gives a title to children, and the judgment to the contrary ought to be reversed.
In Dunn v. Bray, 1 Call, 338, in this Court, the words of the will were: “I give and bequeath to my son Winter Bray, two negroes, named, to him and his heirs forever, but in case my son Winter should die and leave no issue, then I give the said negroes to my son Charles and his heirs forever.” Winter died without issue, and the limitation to Charles was adjudged good, as an executory devise; the words "and leaving no issue,” confining *60 the limitation to the time of his death. The case of Higgenbotham v. Rucker, was a parol gift of slaves stated by the jury to have been a gift of slaves by the plaintiff to his daughter, the wife of the defendant, to her and the heirs of her body, and in case she died without issue, (that is, children, the jury say,) of her body, then the negroes to return to the plaintiff. The wife died in less than a year, without issue; and this remainder was adjudged a good one; because, the limitation to the father, confined the dying without issue to happen in his life, and, therefore, was good within the rule. This case tends to confirm not only that rule, but to obviate the distinction between a deed and will. I think, therefore, that the judgment should be reversed, but as two Judges are for affirm-, ing it, that mush be the judgment of the Court.
Judgment affirmed.

[* See Legate v. Sewell, 1 P. Wms. 90.]