JUDGE) TUCKER,
having stated the case as above, proceeded:
It was observed by Mr. Wickham, that in the case agreed, it is not stated, or agreed, whether the slaves in question were the property of W. Chowning. I shall, however, consider them as such, it being agreed that his daughter derived her possession of them from him, at the time he, delivered them up to be divided among his children. If this delivery was accompanied by a deed for the slaves, it ought to have been so stated; if it were not, no estate in the slaves passed to the children of W. Chown-ing, under the act of 1758, chap. 1, against fraudulent gifts of slaves, (a) as was adjudged in this Court, in Turner v. Turner, (b) and in a still earlier case, Taylor, executor of Rowley, v. Wallace and wife, (c) Elizabeth Chowning’s title was, therefore, under the will of her father. If she died without leaving issue, the remainder, limited to her surviving sisters, took effect from that period, which was in 1788. The defendant, Blakey, who was her executor, and also executor *of her father, must be considered as a party, or privy to the order of Middlesex Court, for the division of her estate, and as consenting thereto. He was, and is, therefore, I conceive, bound thereby; that order having never been appealed from or reversed, (d) The title and possession of Anne C. Taylor and Catha-rine, under the will of Elizabeth Chown-ing, commenced from the time that division was made, on the 26lh of October, 1789. Being consummated with the consent of the executor both of the father and the daughter, it had a legal commencement, and from that period the act of limitations began to run in their favour, against all persons upon whose claims that statute could operate. Whether Anne Blakey, the wife of the defendant, survived her sister, or not, does not appear: nor does it appear, whether the other sisters of Elizabeth Chowning survived her, or if they did, that they were either infants or feme covert. As to them it is immaterial; and equally so, in the present contest, whether Anne Blakey survived her sister, since the present defendant is one against whom the statute would immediately begin to run, although his wife, if she survive him, may not be barred by it. If, indeed, the limitation in Elizabeth Chowning’s will be good, the period from whence the operation of the act of limitations is to be computed, will be postponed to October, 1794, when Anne C. Taylor died; or, perhaps from the time that administration on her estate was committed to Oswald Newby; though I incline rather to the former. But I am of opinion, that the limitation over, ‘in the event that either of her legatees should die without heir lawfully begotten,” is void, as being too remote, as has been repeatedly decided in this Court, (e) On the other hand, I think the limitation in William Chowning’s will, is a good one;(f) consequently, I refer the commencement of the act of limitations, in favour of Anne C. Taylor and Catharine Taylor, to the 26th of October, 1789, about five years before the death of Anne C. Taylor, and more than ten years be-fore *the death of Oswald Newby, his administrator and heir, in right of his wife, who survived Anne C. Taylor, and appears to have been her next of kin. The slaves having come to the plaintiffs, as administrators of Oswald Newby, after a possession of ten years, such a posses *588 sion, I conceive, is sufficient to entitle the plaintiff to recover the slaves against any person or persons whatsoever, except such as may have a right which is not barred by the statute of limitations before their possession may have accrued. And even in that case, I wish it to be understood, that the possession of the defendant thus to be protected, ought to have been legally and peaceably acquired, and not by any tortious act. In what manner the present defendant acquired his possession, is not stated, nor do I deem it material; because, as against him, the act of limitations began to run-in October, 1789, by his express or implied act and consent. And as he was completely barred by the act of limitations, before Oswald Newby’s death, I hold he cannot protect his possession, however acquired, against the claim of the present plaintiffs; for having voluntarily (as there is every reason to presume) delivered the slaves to those persons under whom the plaintiffs claim, with the additional sanctions of an order of Court, he cannot now set up his right either as executor of William Chown-ing, or as remainderman, in right of his wife, under the will of William Chowning, against his own act as executor of Elizabeth Chowning, for the same reason, that in an ejectment, a man cannot object his own possession for twenty years, against his own deed given within that period, as was adjudged in the case of Duval v. Bibb, (a)
Upon the whole, although the case agreed, is one of the most confused and defective that probably was ever submitted to a Court of Judicature, I am inclined to think there are facts enough to enable us to decide (as between the present parties) in favour of the plaintiffs’ right to recover all the slaves in the declaration mentioned, instead of part only', as the District Court have decided.
*1 therefore am of opinion, that the judgment be reversed, and the cause sent back, with directions, as agreed on in conference.
JUDGE ROANE.
The case of Dunn v. Bray, is almost precisely similar to this case, as it respects the limitation over, in the will of W. Chowning, and is decisive to prove, that that limitation is good. The words “die without leaving issue,” &c. are, on the authority of that case, to be considered as restrictive to the time of the death, and Elizabeth Chowning not having had issue at all, the property in the slave Priscilla, and her increase, passed, under that will, to the surviving daughters of W. Chowning. Elizabeth Chowning had, therefore, no power to dispose of the slaves in the declaration mentioned; and, consequently, in this case (as between the now parties) were not affected by length of possession, and by the division, by consent, of the property left by E. Chowning, as found by the case agreed, I should be of opinion to require the case to be supplied, by finding, that W. Chowning had a property in the slave Priscilla, so as to let in and sustain the exclusive claims of his surviving daughters. Elizabeth Chowning having then no power to dispose of these slaves, it is unnecessary to inquire whether the limitation over in her will is good, or too remote, and consequently void. In the first case, (admitting her power to dispose,) Oswald Newby would succeed in right of his wife, by virtue of the will, to the share of Anne C. Taylor, who died intestate, and without issue: and in the last case, he would succeed to the same share under the general law of distributions. But, with respect to the share of Bristow, it was lapsed, by his death, in the life-time of the testatrix, and would pass as her undisposed estate, not to Newby, but to her several distributees :(b) and this, a fortiori, since the right of surviv-orship had been previously abolished by our act of 1786. Newby, therefore, or those under whom he claims, was invested, by the division stated in the verdict, not only with *property belonging to the other daughters of W. Chowning, by virtue of his will, in consequence of E. Chowning’s dying without leaving issue, but also with this portion of property, (Bris-tow’s,) to which even the will of E. Chown-ing would have given him no exclusive title. Thus it is evident that the division in question was grounded upon an entire misconception of the rights of the parties. It, however, put Taylor’s orphans into possession of the negroes. As to the negro, Charles, Newby has been possessed of him more than five years, before the institution of the suit, claiming him in right of his wife: and he has also been possessed of the others, as representing Anne C. Taylor, and claiming under her for the same period. This possession affords a complete bar, under the act of limitations; and, I think, will enable the plaintiff to recover where he has lost the possession, and appears in the character of plaintiff.
The decision in this cause, however, can only bind the parties to this suit, and not the other sisters. They have not agreed to the facts, on which this decision is founded ; and whenever they may think proper to sue, the case will be as open to them, as it was to the appellee, Blakey. We only say, that, as between the parties to this suit, it appears by the facts agreed to by them, that the appellants have a right (by reason of the length of possession) to recover all the slaves mentioned in the declaration.
I am, therefore, of opinion, that the judgment be reversed, and entered for the plaintiffs, for all the negroes in controversy.
JUDGE DEEMING.
Elizabeth Chown-ing, having died without leaving issue, took only an estate for life in the slave Priscilla, under the will of her deceased father, William Chowning, (in which will she was bequeathed by the name of Siller,) consequently Elizabeth Chowning had no right to dispose of her, or any of her increase, by will.
The legacy given by her will to her nephew, John Bristow, who died an infant, in the life-time of the testatrix, *becáme, on his death, a lapsed legacy, and subject to distribution, in the same manner as if she had died intestate, as being undisposed of by her will; and so much thereof as consisted of part of the estate, (to wit, negroes,) bequeathed to *589 her by the will of William Chowning, for life, was subject to distribution amongst her sisters, and their legal representatives only; being controuled by the said William Chowning’s will; and the residue thereof, to be distributed, one moiety to her mother, (if living,) and the other moiety, in equal portions, among her sisters and brother, or their legal representatives.
After the death of Elizabeth Chowning, a division of her estate took place, under an order of Middlesex County Court, and by consent of all parties, in October, 1789. The estate was divided by commissioners appointed for the purpose, into four equal parts, value about 691. 17s. each. No. 1 was allotted to Churchill Blakey, the defendant in this suit, in right of his wife, who was a sister of the deceased Elizabeth. No. 2 in which were included Priscilla and child, was allotted to Catharine (wife of Oswald Newby) and her sister, Anne Chown-ing Taj'lor, as William Taylor’s orphans, whose mother was also sister of the said Elizabeth. No. 3 was allotted to John Chowning, in right of his wife Catharine, who was also a sister of the said Elizabeth; and No. 4, (in which was included Alice, another negro bequeathed by the said William Chowning to the said Elizabeth for life,) was allotted to Henry Street, in right of his wife Euoy, who was likewise a sister of the said Elizabeth Chowning. Churchill Blakey, the present defendant, John Chown-ing and Henry Street, who had married sisters of Elizabeth Chowning, the two former of whom were also executors of William Chowning and of Elizabeth Chowning, and were legatees and distributees of the estate of the said Elizabeth, in right of their wives respectively, consented to, and acquiesced in the division of her estate; each of whom took an equal fourth as his dividend thereof.
It seems to me that, in the will of Elizabeth Chowning, the limitation over to the surviving sisters, in case of the *death of either of them without an heir lawfully begotten, is too remote as tending to a perpetuity, and therefore void.
On the death of Anne Chowning Taylor, in October, 1794, to whom Oswald Newby, the intestate of the appellant, had been appointed guardian, having previously married her sister, Catharine Taylor, her estate (including Priscilla and John, two of the slaves in the declaration mentioned) was appraised, and the said John Chowning was one of the appraisers, and the appraisement, under his hand, returned to Middlesex County Court, in June, 1795; a division of the estate between the two sisters having taken place some time before, on which, (as has been already noticed,) Priscilla and John were allotted to Anne Chowning; and Sarah, Harry and Charles, to her sister, Catharine Newby, who died about the 15th of November, 1794, leaving, by Oswald Newby, a daughter, who died at the age of twelve months.
It is stated in the agreed case, that Oswald Newby, guardian to Anne C. íaylor, was in that capacity possessed of her slaves, Priscilla and John; and that, after her death, he obtained administration of her estate, and, in that character, reduced into possession the slaves, Priscilla and John, who were afterwards appraised as the estate of Anne C. Taylor, as before noticed. Oswald Newby, on his marriage with Catha-rine Taylor, became entitled to all her interest in the slaves reduced into possession ; and being in possession of those of Anne C. Taylor, both as her guardian and administrator, it seems to me that there was no necessity for his making an election publicly in which capacity he held them, but might hold them in that which seemed most beneficial to himself.
As to the conversation stated to have taken place between Oswald Newby and his overseer, in 1797, I think that it ought to have no influence on the decision; and am of opinion, that the long and peaceable possession of the slaves in question, acquired without fraud or force, gave to Oswald Newby a legal title to them ; and consequently, that the ^judgment of the District Court is erroneous, and ought to be reversed, and judgment entered for all the slaves in the declaration mentioned in behalf of the appellants, as administrators of the said Oswald Newby, deceased, but without prejudice to any other person or persons who may claim title to any of the said slaves, and are not parties to this suit; and that, according to the-agreement of the parties, by their counsel, at the trial in the District Court, on the cause being remanded thither, a jury be impanelled to ascertain the value of the said slaves respectively, in the declaration, mentioned; and to ascertain the damages sustained by the plaintiffs as claimed in. their declaration, and, when so ascertained by verdict of a jury, that judgment be entered for the same, with costs.
The judgment of the Court was, “that the long and peaceable possession of the-slaves in question, acquired without fraud or force, gave to the said Oswald Newby a legal title to them,” and, consequently, the judgment of the District Court was erroneous. Judgment for the appellants, for the negroes Priscilla, Charles, John, William, Butler, Solomon, and Milsey. “But the judgment to be without prejudice to any other person or persons who may claim title to any of the said slaves, and are not parties to this suit.” The cause remanded to the District Court, that, according to the agreement of the parties by their counsel, at the trial in the said Court, a jury may be impanelled to ascertain the damages sustained by the appellants as claimed in their declaration, and that judgment be entered for the same, when ascertained, with costs.

 See L. V. edit. 1708, p. 353,

 1 Wash. 139.

 November term, 1787, MS.

 See Fitzhugh v. Foote. 8 Call, 13.

 G-oodwin v. Tai'lor &c., 2 Wash. 74; Wilkins v. Taylor, April, 1864, MS. Hill v. Burrow, and Tate v. Tally, 3 Call, 342, 354.

 Dunn v. Bray, 1 Call, 338; Hig-g-inbotham v. Rucker, 2 Call, 816; Smith and wifev. Chapman, 1 Hen. and Munf. 240.

 3 Call, 362.

 1 P. Wms. 700, Bagwell v. Dry.