Moncure, J.
I think that Frederick Bryan was not to lose the land devised to him, unless and until he should become entitled to the land devised to John F. Bryan. The will so expressly declares, and that was the testator’s plain intention. Then, if the land devised to John F. Bryan was devised to him in tail, the limitation over to Frederick can never take effect; being a remainder limited on an estate tail, and destroyed by the statute converting that estate into a fee simple.
The question therefore is, Whether John F. Bryan took an estate tail in the land devised to him ? If he did, it must have been by virtue of- the words “ die without issue,” in the limitation over; there being no words of inheritance superadded to the devise. The first words of the limitation over are, “ It is my will if my said son John F. Bryan die without issue, that the property heretofore given him shall go to his brother Frederick Bryan.” If the will had stopped here, it would, by clear implication, have created an estate tail in J. F. Bryan; it being well settled that a limitation over in these words superadded to an estate given to the ancestor in fee or for life, will in the one case cut down, and in the other enlarge, the estate of the ancestor into an estate tail. The remaining words are, “ who (that is F. Bryan) in that case will lose the land heretofore given him. It being my will and desire then and in that case,” &o. (ut sufra.) Do these words restrict the technical meaning of the words “ die without issue,” and prevent them from conferring an estate tail on J. F. Bryan ? If the words “ and upon the happening of the event of my son J. F. Bryan’s death,” had been omitted, the residue certainly would not have had that effect. The w'hole question then is, as to the effect of the last recited words in the connection in which they stand.
*292 “Issue” is nomen collectivum, and a word of very extensive import, embracing the whole line of lineal descendants. It is used in the statute de donis, in some instances, at least, synonymously with heirs of the body; and a devise to A and his issue has even been stated by an eminent judge, (Lord Thurlow7,) as “the aptest way of describing an estate tail, according to the statute.” 2 Jarm. on Wills 329, 331. It is a technical word of established meaning, and must always have its effect accordingly, unless there be a clear manifestation of intention in the context to use it in the restricted sense of issue living at the death. It has been long settled that words (occurring in a will which took effect before the revision of Í819) referring to the death of a person without issue, whether the terms be “if he die without issue,” “if he have no issue,” “if he die before- he has any issue,” or “ for want, or in default of issue,” unexplained by the context, and whether applied to real or personal estate, are construed to import a general indefinite failure of issue. Id. 418. “ The rule (in the language of Lord Redesdale) is, that technical words shall have their legal effect, unless from subsequent inconsistent words it is very clear that the testator meant otherwise.” Id. 284. Or “ unless (in the language of another distinguished judge, Lord Alvanley, in Poole v. Poole, 3 Bos. & Pul. 620) the intent appear so plainly to the contrary that no one can misunderstand it.” As to personalty, it seems the word “issue” yields more readily to expressions and circumstances in the will tending to confine it to the restricted sense than when applied to real estate. Id. 427. Thus, where the phrase is, “ leaving no issue,” the settled construction is that, applied to real estate, it means an indefinite failure of issue, but in reference to pérsonal estate, it imports a failure of, issue at the death. Forth v. Chapman, 1 P. Wms. 663, is the leading authority for this distinction; but it has *293 been confirmed by a long train of subsequent decisions. 2 Jarm. 419, and cases cited; also Bamford v. Lord, 78 Eng. C. L. R. 707; Dunn & wife v. Bray, 1 Call 338 ; Hill v. Burrow, 3 Id. 342. The question in this case arises in regard to real, and not personal estate. For though the land in controversy is that which was devised to F. Bryan which, in the event of the limitation over taking effect, is directed to be sold and the money divided, (thus converting the subject, in that event, into personal estate,) yet, as we have seen, the question on which the case depends is as to the estate devised to J. F. Bryan, which in no event is directed to be sold.
Then do the words “ upon the happening of the event of my son J. F. Bryan’s death” clearly manifest an intention to use the word “ issue” in a restricted sense? Similar words have, in England, been held not to have that effect. 2 Jarm. 439. In Walter v. Drew, 1 Com. R. 373, the words of the devise were, “It is my will that if W, my son, shall happen to die and have no issue, &e., then and in that case, and not otherwise, after the death of the said W, I give, &c. all my lands, &c. unto R, my son, to have and to hold the same after the death of the said W, to him and his heirs.” Held that W took an estate tail. In Doe v. Cooper, 1 East. R. 229, it was held that a devise of land to R C for the term only of his life, and after his decease to his issue as tenants in common, but in case he should die without leaving issue, then to E II in fee, gives to R C an estate tail. In Doe v. Goldsmith, 7 Taunt. 209, 2 Eng. C. L. R. 73, the devise was to F Gr and his assigns for his life, and immediately after his decease to the heirs of his body in such parts or shares as he should by deed or will appoint; and in default of such heir of his body, then immediately after Ids decease to J G-. Held, that F Gr took an estate tail by *294 implication. See also Broadhurst v. Morris, 22 Id. 1, and Doe v. Rucastle, &c. 65 Id. 876.
I have seen no English case in which similar words have had the effect of restricting the technical meaning of the words “die without issue,” in regard to real estate, though there have been several in which they have had that effect in regard to personal estate. 2 Jarm. 443; as in Pinbury v. Elkin, 1 P. Wms. 563; which was followed by Stratton v. Payne, 3 Bro. P. C. Toml. ed. 99, (cited in Read v. Shell, 2 Atk. 647;) Wilkinson v. South, 7 T. R. 553; Trotter v. Oswald, 1 Cox’s Cas. 317; and Rackstraw v. Vile, 1 Sim. & Stu. 604, 1 Cond. Eng. Ch. R. 309. But in Donn v. Penny, 19 Ves. R. 545, the words ‘.‘after him” (following the words “ for want of issue”) were held by Sir W. Grant not to vary the construction. “ That no judge of later times, (says Jarman, p. 446,) would have departed from the legal sense of the wmrds upon such an expression as that in Pinbury v. Elkin, admits of little doubt.” But he thinks that, followed as that case has been by the other cases above mentioned, it is too late to question its authority. “ We are taught, however, (he says,) by Sir W. Grant’s decision in Donn v. Penny, that the doctrine of the case of Pinbury v. Elkin will not be applied to any case in which the variation of phrase is such as fairly to take it out of the reach of its authority.”
But stronger manifestation of intention to use the words “ die without issue” in a restricted sense will be required in a case in which a life estate only is given to the ancestor, than in a case in which a fee simple is given to him. In the latter case the issue may inherit the estate from the ancestor as his heirs at law, or derive it from him by deed or will; whereas in the former they cannot get it at all, if the words be construed in a restricted sense; and it is therefore necessary to con *295 strue them in a-technical sense to effectuate the manifest intention of the testator. There can be no conceivable motive for limiting the estate over only in the event of the ancestor’s dying without issue, but that the issue, if any, may have the estate. The restrictive words should therefore be extremely strong to require such a construction as would deprive the issue of any possible means of succeeding to the estate. See 2 Jarm. 440-1 — 2 ; in which the case of Wyld v. Lewis, 1 Atk. R. 432, is cited as having been decided under the influence of these views. But the opinion of Tucker, P. in Doe v. Craigen, 8 Leigh 449, is conclusive on this subject. “ Here, (said he,) the words, if she dies without heirs of her body, do not amount to a devise to the heirs of her body after the determination of her estate for life; and the consequence would be, that if she takes but an estate for life, her issue can never take any thing. The law of England would therefore construe this clearly an estate tail.” “ The estate for life must be enlarged into a fee tail, according to the general intent.” The authorities upon this subject, he said, are numerous; and he cited several, not only from the .English, but also from our own reports.
The will in this case does not give an express estate for life to J. F. Bryan; but it gives the land to him, without the superaddition of any words of inheritance ; and there is nothing in the will, but the limitation over in the event of his dying without issue, to manifest an intention to give them more than a life estate. The consequence is, that but for that limitation over he would have been entitled only to a life estate, independently of the act dispensing with the necessity of words of inheritance in the creation of an estate in fee simple. The act of 1785 converting estates tail into estates in fee, declares that every estate in lands which since the 7th of October 1776 *296 hath been, or hereafter shall be limited so that, as the law aforetime was, such an estate would have been an estate tail, shall be deemed to have been, and to continue, an estate in fee simple. 12 Hen. Stat. 156. The question, therefore, in determining whether an estate tail is created, always is, (or at least was before the revision of 1819,) Whether it would have been such an estate under the law as it was before the 7th of October 1776. In the language of Roane, J. in Tate v. Talley, 3 Call 354, the act “ refers to and reserves all laws then in force for the decision of the question, Whether, in future as well as in past cases, an estate tail would (but for the interposition of the act) have passed or not?” And in the language of Fleming, J. in the same case, “ the whole effect of the statute is to convert estates tail into estates in fee simple, and not to alter the meaning of words or destroy the established rules of construction.” The doctrine of that case, which seems indeed to be nothing more than the necessary construction of the act according to its terms, has been recognized and acted on in all the subsequent cases. Some of the judges in some of the cases supposed that’ as the same act of 17S5, which referred to the law as it aforetime was, also dispensed with the necessity of words of inheritance in the creation of a fee, the law as it aforetime was must be considered as modified to that extent in the determination of cases arising afterwards. But that view, it seems to me, is opposed not only to the manifest design of the provision dispensing with words of inheritance, but to the plain language of the act. That design was to effectuate the probable intent of a grantor or testator where there is nothing in the deed or will to show that a less estate than a fee was intended to be given, and where but for the provision the grantee or devisee would be entitled only to a life estate. The act refers to and adopts the law as it *297 aforetime was without limitation or restriction; and it expressly declares that every estate, &c. “ shall be deemed a fee simple, if a less estate be not limited by express words, or do not appear to have been granted, &c. by construction or operation of law.” Where an estate is devised to A, and if he die without issue, to B, the statute, or rather the provision in question, does not give A an estate in fee, because the will, “ by construction or operation of law,” gives him an estate tail. So also where the words “ then on the happening of his death,” or any other words insufficient to restrict the technical meaning of the word “issue,” are superadded thereto. But it seems to be now definitively settled that the provision in question can have no effect in such cases. “ From an examination of the cases, (says Tucker, P. in Doe v. Craigen, supra,) it will be found that the question is expressly decided against the statute (that is against the effect of the said provision) in Ball v. Payne, 6 Rand. 73 ; and that the case of Bramble v. Billups, 4 Leigh 90, recognizes the principles of that decision in extenso.” Though he had struggled against that construction in more than one case, yet he said he could no longer undertake to controvert it, and must therefore surrender. 8 Leigh 452.
The case of Lucas & wife v. Duffield, 6 Gratt. 456, was cited and very much relied on by the counsel of the appellant, to show that the words “ die without issue,” in this case, were used in the restricted sense of issue living at the death of J. F. Bryan, who did not therefore take an estate tail. Without undertaking to reconcile that case with others on the- same subject, it is sufficient to say that it certainly does not profess, nor was it thereby intended, to overrule the case of Lee v. Craigen, and other cases therein referred to; from which it is plainly distinguishable in this, that the land there was devised to W D, to him, and, his heirs. *298 No reasons are assigned for the judgment; but, in construing the words “ die without legal issue,” to mean issue living at the death of W D, the court no doubt considered that it would not only be pursuing the restrictive words contained in the clause of attestation, but would be giving effect to the whole will; and that the issue might inherit the land as heirs of W D, or derive it from him by deed or will, and thus get the benefit intended for them, while the limitation over would take effect as an executory devise. The decision I imagine would have been different if a life estate only had been given by the will to W D ; and the manifest general intent in favor of the issue could only have been effected by enlarging that life estate into an estate in tail. See Roe v. Grew, 2 Wils. R. 322; and Doe v. Applin, 4 T. R. 82.
The result of what I have said is, that in my opinion J. F. Bryan took an estate tail in the land devised to him, with remainder limited thereon to F. Bryan. It is not material to enquire whether that remainder is limited to take effect on the death of J. F. Bryan without issue indefinitely, or without issue living at his death; as, by the act for docking entails, all remainders, as well contingent as vested, dependent on the estate in tail, are utterly barred; and as the case occurred before the act of 1819 giving effect to every limitation upon such an estate which would be valid when limited upon an estate in fee simple created by technical language. 1 Rev. Code, p. 369, § 25.
The following cases in our own reports tend strongly to sustain the principles on which the foregoing opinion is based : Carter v. Tyler, 1 Call 165; Hill v. Burrow, 3 Id. 342; Tate v. Tally, Id. 354; Eldridge v. Fisher, 1 Hen. & Munf. 559; Goodrich v. Harding, 3 Rand. 280 ; Bells v. Gillespie, 5 Id. 273; Broaddus v. Turner, Id. 308; Ball v. Payne, 6 Id. 73; Jiggetts v. Davis, 1 Leigh 368; Callana v. Pope, 3 Id. 103; Bram *299 ble v. Billups, 4 Id. 90; Doe v. Anderson, Id. 118; Doe v. Craigen, 8 Id. 449; Wright v. Cohoon, 12 Id. 370; Callis v. Kemp, 11 Gratt. 78; and Moore v. Brooks, 12 Id. 135. All of these cases concern real estate; in regard to which there has been little conflict in the decisions of this court. Many cases concerning personal property might be cited for the same purpose; but it cannot be necessary to do so.
It now only remains to consider whether, as contended. by the counsel for the appellant, F. Bryan has concluded himself and his assigns from setting up the title of J. F. Bryan as tenant in tail, by the agreement with him of the 20th of April 1820, and by joining him in the deed of the 21st of August of that year, conveying the land to the appellee Jones. I think not. The agreement was between the two brothers; and was a compromise of their respective rights, whatever they might be, in the land devised to J. F. Bryan. None of the other children of the testator were parties to it, or had any interest whatever in the subject. The agreement was not intended to benefit, and could not injure them in anyway. The only consideration required of F. Bryan for being permitted to participate in the purchase money of the land was his joining in the deed and giving a covenant of warranty to the purchaser, and a covenant to convey to J. F. Bryan, in the event of his having a child or children, one-half of the land devised to F. Bryan, which is the land now in controversy. That land, as early as February 1826, was conveyed by F. Bryan by deed of trust for the benefit of a creditor. The deed was duly recorded; the land was sold under it j has been conveyed to several successive owners ; and ultimately to the appellee Jones, as he says, for full value paid for the fee simple estate; he and those under whom he claims having been advised, as he says, that F. Bryan *300 had a good title to the land under his father’s will. If the said appellee had notice, of the agreement aforesaid, it does not appear that the intermediate vendors had; nor do I deem it material whether they had or not.
I think the decree ought to be affirmed.
The other judges concurred in the opinion of Moncure, J.
Decree affirmed.