Carr, J.
This is another of that numerous class of oases, where the contest is between the alienee, heirs or devisees, of the first taker, and those who claim under a subsequent limitation, as executory devisees. In the cases of Goodrich v. Harding, 3 Rand. 280. Bells v. Gillespie, 5 Rand. 273. Broaddus v. Turner, Id. 308. Ball v. Payne, 6 Rand. 73. heretofore decided, I have given my opinion on this question generally, with the reasons and authorities on which it was founded. These, I shall not repeat, but will simply inquire, whether, and in what degree, the principles governing those cases, where land was devised, apply to the present, where the subject claimed is personal estate.
In the early ages of the law, there could be no limitation over, after an interest given in personal estate, the rule being, that a gift for an hour, as to it, was a gift forever : but this has long been changed; and it is laid down by Mr. Fearne, as settled by numerous decisions, that there may be as well an executory bequest of personal, as an executory devise of real estate. They are governed too, by the same general mies. Thus, in either case, the devise must be such, that -in the very nature of the Imitation it must vest within twenty-one years, after a life or lives in being; if more remote, it is void in its creation : and the question, whether the contingency he too remote, depends on the construction of the will at the time of making, and cannot be influenced by after events. The possibility, at the creation of an executory devise, that the event on which its existence depends, may exceed the proscribed limits, vitiates it from the very beginning. Hence, in all limitations over, after a failure of issue, the question arises, whether it be a definite or indefinite failure, which the testator intended. If a precise time is fixed and clearly defined, and that time be within the prescribed limits, the limitation over is a good executory deviso : but if from the whole will it appear, that the testator meant to give it. to the first taker and his descendants, and that the limitation over should take effect oidy when the issue of the first taker should become extinct, without refer *330 ence ^ any particular event or time, then the devise is void, * ^ though the first taker should die without issue within twelve months. Thus, a devise to A. and his heirs, and if he die without heir, or without heir of his body, or without issue, to B. and his heirs : the devise to B. is void, as being too remote. But a devise to A. and his heirs, and if he die without heir living at his death, or without heir living B then to B. and his heirs, is a good limitation over to B.; because it must vest, if at all, within the time allowed. And, although the failure of issue be not tied up to the death of the first taker, by express words; yet if it can be clearly seen from the whole will, that such was the meaning of the testator, the devise will be good. Upon this question of intention, the courts seem to have taken some distinction between executory devises of real, and bequests of personal estate ; being much more inclined in the latter, than in the former, to lay hold of any words in the will, to tie up the generality of the expression dying without issue, and confine it to dying without issue living at the death of the first taker. Mr. Fearne, in his essay on executory devises (Butler’s edi. ch. 3.) treats this subject with his usual learning and ability: and after citing and commenting upon all the cases touching the points, his conclusion seems to be, that the words dying without issue, when they stand alone, mean an indefinite failure of issue, and make the devise over, whether of realty or of personalty, too remote; but that the signification of these words, in a bequest of personal estate may be confined to a dying without issue then living, by any clause or circumstance in the will, which can indicate or imply such intention. After all, then, it is a question of intention.
The testator, in this case, had two sons and a daughter by his wife. To these he gives real and personal estate, to them and their heirs, and if they die without heirs, he gives the property first to one of them, and then to the other, so as to shew, that b.y heirs he meant issue; making it to each an estate tail. It is most clear to me, that in each of these *331 devises, he meant that the first taker should have an estate transmissible to his descendants, so long as any existed; and ¿hat, whenever the line of the first taker should fail, the property should go to the second taker, without reference to the time of such failure. I think thus, because this is the very nature of such estate as is given; an estate tail necessarily implying issue, in indefinite succession : and as it is given to the first taker, so long as he shall have descendants, we cannot suppose it was intended to limit the commencement of the estate of the next taker, to an earlier period, without words to that effect. Thus, it seems to me, that each of the legitimate children took an estate tail, which the statute enlarged into a fee. Then, as to the natural son, the testdtor gives him, two negro boys, two negro girls, and their future increase, to him and his heirs forever ; and if he die without heirs, he gives the negroes among his legitimate children. T see nothing in the will tying up this bequest to a dying without issue living at the death. Then comes the clause under which the plaintiffs claim : “in case all my children by my wife should die without heirs, it is my will, that my son Charles, shall fall heir to the whole of my estate.” By these words, “ if all my children by my wife should die without heirs,” it seems to me, that (recollecting the manner, in which the testator uniformly uses the word ‘ heirs’) an implied estate tail is given to each of his lawful children in his whole estate, and then a fee simple to Charles, by the words “ my son Charles shall fall heir to the whole of my estate.” But this fee is cut down, I think, by the next clause (the testator by heirs always meaning issue): “ And in case he ( Charles) should also die without heirs, it is my desire, that my estate be divided into six parts, and that three-sixths go to my father’s brothers that are alive, and the heirs of those who are dead, such heirs receiving no more among them, than my father’s brothers would have received had they been living, &c.” Now, it seems to me impossible to doubt, that the intention here was to give this estate to the family of Charles, as long as there should be, *332 any descendant of his in the lapse of time. Nor can f think the testator meant, that unless his father’s brothers, and the other devisees, could take at the instant of the death of Charles, they should never take; that if Charles should have a child which should die the next hour, this should defeat all the limitations over in that clause. I must think he meant that whenever the issue of Charles failed, his uncles and the other devisees should take; and this we know, was a contingency too remote. The plaintiffs acknowledge this to be the case as to the real estate, by making no claim to it j and it is clear to me, that the intention as to both was the same.
The cases of Timberlake v. Graves, and Gresham v. Gresham, 6 Munf. 174. 187. were cited as governing this. Judging from the reports of these cases, they underwent but little discussion, either from the bar or the bench. Understanding them as tire counsel did, I acknowledge I cannot see clearly how they are to be reconciled to the otherwise unbroken current of decision, both in England and here: yet they do not profess to overrule or depart from the former cases. In Timberlake v. Graves (which governed the other) there was a devise of slaves and their increase, “ to my beloved nephew, J. A. and his heirs forever; and if he die without heir, then and in that case, what I have given him, to be equally divided between my two nieces, M. A. and P. A.” The first taker J. A. sold one of the slaves, and died without issue. The executory legatees brought detinue against the purchaser. A special verdict stated these facts, and the court below gave judgment for the defendants. This court reversed it, and entered judgment for the plaintiffs. Judge Roane, who pronounced the opinion of the court, assigned the following reasons : 5i the ground on which the opinion of the court is founded, is, that the devise over to the nieces, is to them merely, and not to them and their heirs. It purports a limitation to themselves, and was intended as a personal benefit to them. This construction is fortified by the words then and in that case, and equally to be divided, *333 found in the bequest; which, though singly taken, they might not be complete to limit the previous words, have that effect in conjunction with the circumstance above meniioued.” The ground here assumed, is, that the nieces took no estate transmissible to their representativos; nothing but a life estate : that it was a personal benefit intended for them alone, which would he intirely defeated, if it did not take effect in iheir lives: and on this principle, it was considered as tying up the failure of issue to a life in being.. If the court had believed, that the devise to the nieces carried the whole interest in the slaves, it must, upon its own ground, have pronounced it bad; for then it would not have narrowed the operation of the preceding words, which of themselves clearly meant an indefinite failure of issue. Taking the case thus, (and I can understand it no other way), it would seem to make against the plaintiffs in this case : since, if the devise here were intended solely as a personal benefit; if the interest it gave, was hut a life estate ; then, the contingency on which it was to vest, has never happened, for it was to take effect only after the death of all the testator’s children, and one of them outlived all die executory devisees. The same reply may be given to the proposition, that from the devise to the wife in this same clause, it is evident the contingency was limited to happen in her life: if this be true, the contingency has not and cannot happen, for the daughter Elizabeth survived her mother.
But, it seems to mo, the devise to the testator’s uncles, was not a mere personal benefit: it is to those who are alive, and the heirs of those who are dead; and such heirs are to take no more among them than the uncles would, had they been living: When ? Not at any particular period, hut whenever the failure of issue should happen. Moreover, the devise (as was admitted at the bar) gives them the whole interest, the fee: this takes it wholly out of the influence of Timberlake v. Graves,
*334 Green, J.
The last member of the clause of Mr. Thomson’s will, on which this case depends, giving the testator’s wjfe the use 0f tjie whole of the estate for life, in case all # ... her children should die without heirs, should, in its natural order, be read as occurring in the commencement of the clause, thus: “ It is my will and desire, that, in case all my children by my wife, should die without heirs, she is to have the use of the whole of my estate as long as she lives, and that my son Charles shall fall heir, &c.” It is clear, that the word “ heirs,” wherever it is used in this clause, means issue ; that the expression used, in relation to the brothers of the testator’s father “who are alive,” meant such as might be alive upon the death without issue of all those who were to take before them; and that this expression was intended, not to prescribe as a condition upon which the limitation over was to take effect, that some one or more of them must be then alive, but the mode in which those alive, if any, and the descendants of those dead, or of all, if all were dead, should take; that is, per stirpes.
This, then, is a naked case of a limitation over after an indefinite failure of issue, unless the limitation being to persons in esse, without the addition of words of perpetuity, restrains it within the limits allowed to executory bequests» for, the interposition of an estate for life to the wife, between that of the first takers and the ultimate limitation, has no effect in imposing such a restraint. The testator did not mean, that the death of the wife before the failure of the issue of the first takers, should defeat the other limitations over, or that her being alive at that time, should he a necessary condition to the right of those who were intended to take ultimately, upon the failure of the issue of the first takers : he only intended, that she should take the life estate, in the event that she was then alive. This was expressly held in Barlow v. Salter, 17 Ves. 479. in the case of personal estate; and the case of Clare v. Clare, Ca. Temp. Talb. 21. is to the same effect. There, the devise was of’ a term in trust for A. for life, and after his death for his is *335 sue male for life, and when the issue male should happen to he extinct, for C. for life, remainder in trust for the issue of C. for life, remainder to the issue male of the family of Clare: and it was held that all the limitations over, after the life estate of A. (he dying without issue in the lifetime of O.) were void, and a residuary legatee entitled.
There is no adjudged case in this court, which touches the question under consideration, except Timberlake v. Graves, and the other cases turning upon the same principle, and which followed that, in quick succession. Dunn v. Bray, 1 Call, 338. turned upon the word leave. In Higgenbotham v. Rucker, 2 Call, 313. the word issue was explained by the word children. In Pleasants v. Pleasants, 2 Call, 319. the devise of partial freedom was to persons in esse and their immediate descendants: Yet the court established a perfect perpetuity, and allowed the will of a testator to determine the condition of their descendants forever ; slaves until a given age, and afterwards free; a partial slavery once allowed, but before that will was made, abolished by our laws. And in Royall v. Eppes, 2 Munf. 479. the quality of the property bequeathed decided the; cause; slaves which came by the wife, to return to her in person, without embracing their issue or increase.
In Timberlake v. Graves (decided March 1818) the limitation over to particular persons, without words of perpetuity, was held to restrain the dying without issue, to the period of tlieir lives; as purporting a limitation to themselves, and intended as a personal benefit to them. But the court did not rely upon that circumstance alone: they considered the words then and in that case, and to be equally divided, as aiding that.-eonstruction, although singly taken they might not be complete to limit the previous words. This effect attributed to those other words, had some countenance, though perhaps was not justified, by the case of Pinbury v. Elkin, 1 P. Wms. 563. where the words then after her decease, were held to tie up the event upon which the limitation over was to take effect, to a dying without issue then living: *336 and Doe v. Lyde, 1 T. R. 593. in which the words, to the children share and share alike, and if he die without issue then over, was held to have that effect. In Gresham v. Greshams (October 1818) the limitation over to particular persons, without words of perpetuity, was connected with a direction that the subject should be equally divided between them. Then followed the case of James v. M’Williams (February 1819) in which there was no circumstance, except the limitation over without words of perpetuity, to determine the construction; and the limitation over was held to be good. In the case of Didlake V. Hooper, the bequest to A. for life, and if he have issue, to them at his death; and if he should die without issue, to two, by name, without words of perpetuity: there, the limitation over might be construed to be intended to take effect, only upon a dying without such issue as could take at the death of the first taker, who took only for his life. In the reports of these cases, we have none of the arguments of counsel: indeed, none of them, except the first, appear to have been argued : all the others, except perhaps the last, must have been decided’ upon the authority of the first, and upon the admission, that that proceeded upon the ground, that a limitation over after the failure of issue, without words of perpetuity, was good, without the aid of any other circumstance.
This doctrine was, for the first time, asserted in Timber-lake v. Graves; and, so far from being supported by any insinuation in any prior case, is expressly contradicted by great numbers. In Bigge v. Bensley, 1 Bro. C. C. 187. Glover v. Strothoff, 2 Bro. C. C. 33. and Robinson v. Fitzherbert, Id. 127. we have the very words of the wills; and in the last, an equal division was also directed. The limrtations were held to be too remote, although the circumstance under consideration occurred in all of them. The counsel, in those cases, did not even suggest, that it was entitled to any weight, nor has. it ever been suggested in any of the multitude of cases to the same effect, which *337 might he cited. Neither, is it reconcileable with the eerie- - i'a! principle of executory bequests. The settled rule, irequentiy recognized in this court, is, that to the validity of an executory devise or bequest, it is necessary, that it be so framed as to shew, that the testator intended it should not take effect, unless the event, upon which it was to do so, was such as must, necessarily happen, if at all, within the period allowed by law. If a devise over for life only, be good, it is because it cannot take effect at all, unless the failure of issue take place in the lifetime of the devisee, who is to take a life estate in that event. But a contingent limitation of personal estate, without words of perpetuity, always gave as absolute a right, as if given with words of perpetuity; an interest, which, before the contingency happens, is vendible, deviseablo and transmissible to the representatives of the devisee. Fearne, Butler’s edi. 548. 552. Bpon what ground, then, can the presence or absence of words of perpetuity, make any difference in the construction ? It is said, because the want of such words indicates the state of the testator’s mind, and that he contemplated the probability that the event might or would take place in the lifetime of the party designated to take in that event. That must necessarily be in bis contemplation, in all possible cases: but that alone is not enough to make the limitation good : he must also iulend, that the limitation over shall not take effect, unless the event does happen in the lifetime of the party 5 or it is void.
The only ground, upon which the cases of Timberlake v. Graves, and those that followed it, can be supported, is, that the omission of words of perpetuity proves, that the testator intended that the limitation should not take effect, unless the failure of issue happened in the lifetime of the person designated to take in that event: otherwise, the legal restraint upon perpetuities is utterly abrogated, and a testator may controul his property ad infinitum, by limiting it to some person, or a succession of persons, in esse, after a general failure of issue, without words of perpetuity; in which case. *338 upon a failure of issue after many generations, the limitation being good in its origin, his remote executors or administrators will be entitled, for the benefit, first, of his creditors, and then of his descendants or collateral kindred. This we cannot suppose the court intended, by the decisions in those cases ; and they are not authority for the case at bar, as all those intended to take upon tire failure of the first taker, died in his lifetime : otherwise, this absurdity would follow, that the limitation being valid, because the testator intended only a personal benefit to the executory legatee, his executors, and through them, his creditors, may take it in the event in which it was impossible for him to take or enjoy the personal benefit intended; and that the testator, intending that the bequest should not take effect, unless the legatee were alive when the event happened, yet his right to take exists, and is transmitted to his personal representative, though the event has not happened in his lifetime.
. If I am .wrong in this, there'is another ground, on which all the limitations over, in this clause of the will, were clearly void. That to the testator’s natural son, which preceded all the others, was accompanied with words of perpetuity : if all the other children died without heirs, he was to fall heir to the whole estate; and if he died without heirs, then over to those now claiming. These words give him, upon the expressed intention of the testator, as absolute an estate, as if tire gift had‘been to him and his heirs in terms. So that the limitation over to him, upon a general failure of issue, was clearly void. And, when a preceding limitation is too remote, all that succeed it, even although limited to take effect in good time, are defeated. Thus, in Proctor v. Bishop of Bath and Wells, 2 H. Blacks. 358. a devise to the first or other son of T. P. (he having none) that should be bred a clergyman and be in holy orders, and to his heirs and assigns, but if T. P. shall have no such son, then to his grandson T. M. and his heirs : T. P. died without ever having had a son; and it was held, that the first limitation over was too remote, as none could take holy orders until the age of twenty-four, and as T. P. might have a son born a short *339 time before his death, who might take holy orders at the age of twenty-four, which would be beyond the fixed limit of executory devises; and that the devise over was, consecjuently void also. The same principle is affirmed in Chatham v. Tothill, 7 Bro. P. C. 453. Tomlins’ edi.
One word as to the influence, which our statute of 1819, prescribing the construction of future limitations after a failure of issue, ought to have upon our judgment, in cases like this. Elizabeth G. Thomson had, as the law was clearly settled when her father made his will, and her mother and brothers died, an absolute right to the property in question, with an unlimited power to dispose of it at her pleasure. Surely, it is too much to say, that the court should now deprive her devisee, or purchasers from her, of those vested rights, because the legislature has changed the law, even if that was done in consequence of an opinion, that the courts had given an improper construction to the effect of such limitations. Those constructions, right or wrong (and I think, they were founded in sound principles of public policy and private convenience) had fixed the law, and gave rights, which, like all others, should be held sacred.