Parker, J.
I am clearly of opinion, that the limitation over to the children of Elizabeth Lee, contained in the will of Cooke, is too remote, being after a quasi estate tail to Thomas Deane; and as this point puts an end to the case, it is unnecessary to notice any other.
After the death of Mary Deane, the testator lends certain slaves and their increase to his grandson Thomas Deane “ and his heirs of his body; and if he should die without a lawful heir,” he bequeaths the slaves and their increase to the children of his daughter mrs. Lee. There is nothing here, to confine the failure of the heirs of the grandson to his death. In legal contemplation, the words of the bequest import a dying without heirs of his body whenever they fail, although that event may *256 not take place for centuries. The children of mrs. Lee and their representatives, if entitled at all, would, under the settled technical construction of these words, be entitled whenever the heirs of the grandson should become extinct, whether at his death or at some remoter period. This would be a bequest tending to a perpetuity, and for that reason, the law will not permit it to take effect. An effectual limitation of personal property must be confined to the period of a life or lives in being and twenty-one years and some months after; and where the words import an estate tail, there must be other words in the will, confining the general words to the dying without heirs or issue at the death of the first taker, to enable the court to support the limitation. Here, there are no such words. The expression indeed is, “ I lend to Thomas Deane” &e. but it is a loan to him and the heirs of his body; and there is no sound distinction between such a loan and words importing a gift. Williamson v. Ledbetter, 2 Munf. 521.
The words of this bequest, applied to lands, would create an express estate tail; and herein it is distinguishable from some cases in this court, where there was an implied estate tail in the first taker; as in those of Gresham v. Gresham and James v. M’Williams. It is also distinguishable from them in the circumstance, that the limitation is to a class of persons by description, not by name; which excludes the idea there relied on, of a personal benefit being intended to themselves. It differs also from the case of Timberlake v. Graves, not only in these particulars, but in the absence of the words “ then and in that case,” and “ equally to be divided,” upon which the court seemed to lay some stress, in aid of the construction supporting the limitation. The authority of this class of cases in support of a limitation, on the ground that a personal benefit was intended to the persons named, and that no words of inheritance were annexed, is certainly questioned, if not disregarded, in the *257 subsequent cases of Griffith v. Thomson, 1 Leigh 321. and Callana v. Pope, 3 Leigh 103. And it is difficult to conceive how those cases came to be so ruled by this court, after the case of Wilkins v. Taylor, 5 Call 150. (which they expressly contradict) and in opposition also to all the english cases; Beauclerk v. Dormer, 2 Atk. 308. and Green v. Rodd there cited; Bigge v. Beasley, 1 Bro. C. C. 187. Glover v. Strothoff, 2 Bro. C. C. 33. Robinson v. Fitzherbert, Id. 127. Earl of Stafford v. Buckley, 2 Ves. sen. 171. Everest v. Gell, 1 Ves. jun. 286. Chandless v. Price, 3 Ves. 99. Rawlins v. Goldtrap, 5 Ves. 440. Wherever the english judges have supported the limitation after a failure of heirs or issue, they have done so upon the force of some particular words, indicating an intention, that the interest of the remainder-man should vest at or very soon after the death of the lirst taker, or not at all; and to effect this, they have pressed into the service the words 'leave or leaving issue ; as in Forth v. Chapman, 1 P. Wms. 663. Atkynson v. Hutchinson, 3 P. Wms. 258. Crooke v. De Vandes, 9 Ves. 157. Goodtitle v. Pegden, 2 T. R. 720. Green v. Ward, 1 Russ. 262. so in Dunn v. Bray, 1 Call 338.—or the words then after his or her decease ; as in Pinbury v. Elkin, 1 P. Wms. 563. Doc v. Lyde, 1 T. R. 593. and Wilkinson v. South, 7 T. R. 555.—or survivor, or survivors, or surviving children; as in Nichols v. Skinner, Chan. Prec. 528. Massey v. Hudson, 2 Meriv. 129. and Ranelagh v. Ranelagh, 2 Myln. & Keen. 441. 8 Condens. Eng. Ch. Rep. 74. so in Cordle's adm'r v. Cordle's ex'or, 6 Munf. 455.—or some other equivalent expressions. But as far as my researches have extended, they have never relied on the distinction first taken by this court in Timberlake v. Graves, but have often disregarded it. Yet that case having been followed by several others, and the statute of 1819, 1 Rev. Code, ch. 99. § 26. p. 369. having from that period given effect to such contingent limitations, I am not disposed, in a case not absolutely *258 requiring it, to say that those cases ought to be overruled, especially as some of my brethren seem to think that the distinctions I have pointed out between them and the case at bar, are sufficiently broad to leave it without their influence.
It is enough to say, that I see in this case no words to control the technical interpretation of the bequest to Thomas Deane and the heirs of his body, made before the year 1819. The decree must, therefore, be reversed, and the bill dismissed.
Brockenbrough, J.
The only difference that I can perceive between the bequest here and that in Timberlahe v. Graves, is, that in that case the persons to whom the slaves were limited over were certain and named, that is, the “ two nieces Margaret Allen and Patsy Allen in this, the persons are not named, and they are not certain ; for who might be the children of mrs. Lee, either at the death of Thomas Deane, or at the remote period of the failure of his issue, no one can tell. The grounds of the decision in that case were, first, that the devise over was to them merely, and not to them and their heirs; secondly, that it purported a limitation to themselves, and was intended as & personal benefit to them. The first reason would apply to this case, because the limitation over is to the children of mrs. Lee, and not to them and their heirs; but the second is not applicable, because, as the testator did not know who the children of mrs. Lee would be, he could not be supposed to intend them as peculiar objects of his affection and bounty; not more so than any other of his unnamed and unknown grandchildren. The decision in Timberlake v. Graves has been, I believe, generally disapproved by the profession, as being a departure from the long established rule, that a limitation over of personal estate, after a dying without issue, or without heirs, is a limitation after an indefinite failure of issue; and therefore void, *259 and that the whole interest vests in the first taker. It was disapproved of by this court (or rather by two judges of the court) in Griffith v. Thomson, but it was not expressly overruled. If the point adjudicated in Timberlake v. Graves had been confined to that case alone, I should have concurred in the opinion to overrule it: but it was followed in quick succession by Gresham v. Gresham, James v. M’ Williams, and Didlake v. Hooper. These adjudications ought to be considered as settling the law in cases exactly resembling them, more especially as in devises made since the statute of 1819 took effect, the statutory rule will prevail. But I think it ought not to be extended further (in wills antecedent to the new statute) than those cases will strictly and literally warrant. I have already pointed out the difference which I think distinguishes this case from Timberlake v. Graves. I am of opinion that the limitation here is after an indefinite failure of issue, and is too remote, and void, and that Thomas Deane bad the whole interest in the slaves and their increase; and that, therefore, the decree should be reversed and the bill dismissed.
Cabell, J.
I am of opinion, that the limitation over, in the present case, is not sustained by the authority of the decisions of Westminster hall; nor do 1 think it supported by any of the decisions of this court. It is not like the executory devises in Timberlake v. Graves, Gresham v. Gresham, James v. M'Williams, or Didlake v. Hooper: there was a circumstance in each of those cases which is not to be found in this. There, the limitation over was to persons in esse and named; to them merely, and not to their heirs Sfc. and the court said, that this purported a limitation to themselves, and was intended as apersonal benefit to them, which excluded the idea of an indefinite failure of issue. But in the case before us, the limitation over is to a class of persons, *260 the children of mrs. Lee; none of whom are named, and some of whom might not then be in esse. And as I am not disposed to carry the principle of those cases farther than it has already been carried, I cannot support the limitation in this case, there being nothing to restrain it within the prescribed limits.
But as this case stands clear of Timberlalce v. Graves, and all that class of cases,. I shall not go out of my way to express any opinion concerning them, favourable or unfavourable. It will be time enough to do so, when a case shall occur, presenting similar circumstances. It is contended, that one such case has occurred; Griffith v. Thomson, 1 Leigh 321. I am not prepared to say, whether it does or does not involve the same principle. In that case, the court, consisting of three judges, disregarded the principle decided in Timberlake v. Graves, and the other cases which followed it; and two of the judges expressly assailed its correctness. The case of Callava v. Pope, 3 Leigh 103. cannot, I think, be regarded as in conflict with Timberlake v. Graves; in Callava v. Pope, the limitation over was to a class of persons. Whether a single decision of a court consisting of three judges shall overrule a series of decisions of the whole court, will be a matter for consideration when the point shall be properly presented. I cannot, however, refrain from adverting to one fact, which is sometimes relied upon as calculated to detract from the authority of Timberlake v. Graves, &c. namely, that the arguments of the counsel are not reported, and that the court adverted to no authorities in pronouncing its decisions. But although the fact is as stated, yet it does not'follow, that the cases were not ably argued at the bar, and gravely considered by the court. It frequently happened, in.those days, that important cases, which had been elaborately argued at the bar, and long considered by the court, were decided by simply affirming or reversing;'the court thinking it more important to *261 administer the iustice of the country, than to spend, its , . . ...... time m assigning the reasons and authorities which had led to its decisions; and the arguments of the bar were not given by the reporter (mr. Munford) simply because his official duties, as clerk of the house of delegates, prevented him from attending the court, for months together. Hence it is that his 6th volume contains the decisions of nearly three years.
I am of opinion that the decree should be reversed, and the bill dismissed.
Brooke, J. I concur in the opinion that the decree should be reversed, and the bill dismissed; and in the remarks of my brother Cabell touching Timberlake v. Graves, &c.
Tucker, P. I have no doubt, that this decree ought to be reversed, and the bill dismissed. For my own part, however, I do not see any essential difference between the executory limitation in the present case, and the limitations in Timberlake v. Graves, and some of the other cases which followed the principle on which that case was decided: but in deference to the opinion of my brethren, I forbear to enter into an examination of that class of cases.
Decree reversed, and bill dismissed.