AI/EEN, P.
This case brings again before -the court the question, so often discussed here and in England, as to the' operation of the rule in Shelley’s Case, that where an estate of freehold is limited to a person, .and the same instrument contains a limitation, mediate or immediate, to the heirs of his body, or to his heirs, the ancestor takes the whole estate comprised in the terms, ether as a fee tail or a fee simple. In this case there is no limitation over on the failure of issue; and the only question arising on the will is, whether the testator, in reference to the devise or bequest to his daughters Mary Murphy and Caroline Brooks, used the words “heirs lawfully begotten” in their legal, primary and proper sense,, or whether he used them as descriptive Of some other class of objects. In the view I take of this case, the interpretation of the will *is not affected by the character of the property. If, as applied to real estate, the clause would have created an estate tail in the daughters, in such case the full and entire interest in personalty would pass to the legatee; as an estate tail in personal property gives the absolute dominion.
When a testator uses a term having a well known legal meán-ing, he is to be understood as having used it in that sense, unless the context shows that he used it in a different sense. Unless that is apparent, the rule is inflexible; and though the testator may have supposed that the first taker would take an estate for life only, and perhaps so intended as then advised, yet it does not follow if he had been aware of all the consequences of a change in the term used, that he would have made it. The will bequeaths the property to his daughters, to be held by them during their natural lives and no longer, and then to be equally divided between their heirs lawfully begotten. If the words “during their natural lives and no longer,” and “then equally divided between their heirs,” are to be construed as modifying the words “heirs lawfully begotten,” and as describing another class, and to imply children, who were to take as purchasers, then if the daughters had died leaving grand children, they would have been excluded. But giving the term heirs its legal and proper sense, all the descendants of the daughters would be embraced. So that it is at least conjectural, if we are to look to intention alone, in what sense the testator meant to use the term. It therefore would seem that the better plan is to give such words their plain, legal effect, and to reject mere loose expressions, from which to infer an intention that they were used as descriptive of a different class of objects.
The words here relied on as modifying the words “heirs lawfully begotten,” do not indicate such intention *so clearly as to justify the conclusion contended for. ‘‘During their natural lives and no longer,” is no more than to show what appears in all these cases, that he meant to confer an estate for life; and it is to this class of cases that the rule in Shelley’s Case applies: and the words “equally divided between their heirs,” are* as it seems to me, entitled to but little weight in fixing upon the word “heirs” the meaning contended for. In England they were entitled to more consideration, as indicating an intent that the estate should not pass according- to the law of descents. With us, where estates tail are converted into estates in fee simple, and the doctrine of primogeniture is abolished, and the general sentiment is in favor of an equal division amongst those standing in the same relation, the inference would be that the testator, by the use of these words, intended that they should take as heirs rather than in any other character. But upon this question th'e authorities are numerous both in England and in Virginia; and they have been conflicting and inconsistent. It is conceded *535 in the argument, and the cases show, that such expressions as “share and share alike,” or “as tenants in common,” &c., have controlled the word “heirs.” The whole question was elaborately discussed and carefully considered in the case of Jesson v. Wright, 2 Bligh’s P. R. 1, upon appeal to the house of lords.
The devise was to W for life, and after his decease, to the heirs of his body, in such shares and proportions as W by deed, &c., should appoint; and for want of such appointment, to the heirs of the body of W, “share and share alike as tenants in common.” And if but one “child,” the whole to such only child; and for want of such issue, to the devisor. The court held that an estate tail vested in W by this devise, reversing the decision in King’s bench, and overruling all that class of cases which had given to such words the '^effect of modifying and controlling the meaning of the technical word “heirs.” Bord Redesdale said, “That the general intent should overrule the particular, is not the most accurate expression of the principle of decision. The rule is that technical words shall have their legal effect, unless from subsequent inconsistent words it is very clear that the testator meant otherwise.” — “It has been argued that heirs of the body cannot take as tenants in common ; but it does not follow that the testator did not intend that the heirs of the body should take, because thejr cannot take in the mode prescribed. This only follows, that having given to heirs of the body, he could not modify that gift in the two different ways he desired, and the words of modification are to be rejected.”
Several cases have occurred since the case of Jesson v. Wright; and though in some instances the principle of that case may not have been followed out, yet the weight of authority is in favor of the rule there enounced. The cases on this subject are reviewed in 2 Jarm. on Wills 271, ch. 37; and he concludes that the doctrine of Jesson v. Wright has prevailed, and stands on the soundest principles of construction. Hayes on Estates Tail 100, 7 Law Libr. 54, sustains the same proposition. See also to the same effect Powell on Devises 464, ch. 23, 22 Law Libr. 245.
The words in the will under consideration are not so strong as in the case referred to. There the heirs of the body could not take as tenants in common, and the court was compelled to reject the words of modification. In this case the words of modification are not inconsistent with the operative words of the bequest or devise, because the property passing by descent to the heirs, would be equally divided if they all stood in the same degree of relationship.
It is contended, however, that this is no longer an open question in Virginia; and that the precise question *has been adjudged in at least one case, and the principle affirmed in others. Bradley v. Mosby, 3 Call 44, is arelied on as having in effect settled the principle that the word “heirs” should, in a will like this, be treated as descriptive of another class, the children of the first taker. In that case there was a limitation by deed of slaves to the donor’s daughter for life, and after her death to the heirs of her body, to the only proper use and behoof of such heirs, “their executors, administrators and assigns.” The court, consisting of Judges Pendleton, Byons and Roane, was divided; each judge giving a different construction to the will. Pendleton founded his opinion upon the supposed distinction between words which create an express estate tail, and such as create an estate tail in lands by implication and construction, to favor the intention to provide for- the issue ; and maintained that the latter ought not to be applied to personals to defeat the intention. But the rule in question is not confined to cases in which the words, if applied to real estate, would create an express estate tail; it applies also to cases in which an estate tail would arise by implication, with the exception of those cases in which words expressive of a failure of issue are in gifts of personal but not of real estate, confined to issue living at the death ; questions depending not so much upon the sense in which the word “heirs” has been used by the donor, as upon the fact whether the limitation over is too remote. Powell on Devises 632 (mar.) 22 Law Lib. 338; 2 Jarm. on Wills 489, ch. 44. In the case of Lampley v. Blower, 23 Atk. R. 396, referred to by Judge Pendleton, Bord Hardwicke said, that a gift to A and her issue would vest the whole interest in A if it had stopped there; but held that the bequest over, in case either of the legatees died without leaving issue, which in regard to personalty, in legal construction means issue living at the death, explained 148 issue in the body _x'of the devise to be used in the same sense. Judge Roane rested his opinion exclusively upon the words giving the property to the heirs of the first taker, to the only proper use of such heirs, their executors, administrators or assigns, as showing “there was no eye of entail;” for it could not go from one heir of the body and his executors and administrators to another heir and his executors and administrators; for which he cites Hodgeson v. Bussey, 2 Atk. R. 89; Theebridge v. Kilbourne, 2 Ves. R. 233, which in a great measure turned upon the import of those words. Byons, judge, held that the words would have given an estate tail in lands, and therefore they gave the absolute property in slaves. The case therefore decided no principle applicable to the will now under consideration; and the opinions of Judges Roane and Pendleton were founded, the first upon expressions not found, in his will, and the last upon the idea of a distinction between cases in which the words when used in reference to realty would create an express estate tail, and those in which an éstate tail would be created by implication: a distinction it appears that does not exist except in certain *536 cases where words expressive of issue receive a different construction as applied to real and personal estate; as in the case of the phrase “leaving' no issue;” in respect to which it has been held that it means an indefinite failure of issue where real estate is the subject, but in reference to personal estate, it means a failure of issue at the death. Forth v. Chapman, 1 P. Wms. 663.
Warners v. Mason & wife, 5 Munf. 242, turned upon the question whether the limitation over was too remote. The testator devised land to his son during his natural life, and then to his heirs lawfully begotten of his body, “that is, born at the time of his death or nine calendar months thereafter;” and for want of such heirs, then to his nephews, one to set a price and *give or receive such price from the other: This was held to be a good limitation over. No opinion was given by the court, but it is manifest the court held that the testator looked to the period of the death of his son, and not to an indefinite failure of issue, because he speaks of heirs born at the son’s death; and the remainder was to persons in being who were the objects of his bounty. These superadded words to the words “heirs lawfully begotten,” demonstrating that the testator did not contemplate an indefinite failure of issue.
Pryor v. Duncan, 6 Gratt. 27, was decided upon the ground, that although the words ‘ ‘heirs lawfully begotten,” were used in one clause, the whole context showed that the words were not used in their legal and primary sense, but were descriptive of another class of persons fully pointed out in a following clause, as the children of the first taker.' He lent the slaves to his daughter during her natural life, and to her heirs, &c. Her interest was to cease, and his executors to take possession, if she concealed or attempted to alienate the slaves; in such case, after her decease they and their increase to be divided among her “children,” if any living; otherwise to be divided among the testator’s children (naming them), and their heirs. Thus showing, from the indifferent use of the words “heirs” and “children,” by the restricted power over the property, and by the bequest over if no “children” living at her death, that he used the words “heirs lawfully begotten” in the sense of “children.”
The last case to which the counsel of the appellant referred is the case of Self v. Tune, 6 Munf. 470. By deed slaves were given to a daughter of the donor and her husband, for and during their natural lives; and after the decease of both, the slaves and their increase “to be equally divided among the heirs of her body:” and in default of such heirs, to return and be equally ^divided between the donor’s son and other daughter, and their heirs. The court, in the brief opinion pronounced by Judge Roane, says, If these words “heirs of her body” had stood alone in the limitation after the death of the daughter and her husband, her title would have been absolute; as in that case they would have been words of limitation: But the addition of the words “equally to be divided between them,” compelled the court to construe them as words of purchase, and as a description of the persons who were .to take. ’ ’
The cases of Wilson v. Vansittart, Amb. R. 562; Doe ex dem. Long v. Laming, 2 Burr. R. 1100, and cases of that description, where words of that and the like character were held to modify the words ‘ ‘heirs of the body,” were overruled by Jesson v. Wright, and the cases which have followed it. Powell on Devises 466, 22 Law Libr. 249; 2 Jarm. on Wills 286, ch. 37; where all the cases are collated.
The case of Self v. Tune forms one of a series decided about the same time upon the construction of the rule in Shelley’s Case, and what would amount to a good limitation over. These are the cases of Timberlake v. Graves, 6 Munf. 174; Gresham v. Gresham, Id. 187; James v. McWilliams, Id. 301; Cordle’s adm’r v. Cordle, Id. 456; and Didlake v. Hooper, Gilm. 184. The authority of these last cases has been shaken, if not overthrown, by the subsequent cases of Bells v. Gillespie, 5 Rand. 273; Broaddus v. Turner, Id. 308; Griffith v. Thompson, 1 Leigh 321; Callava v. Pope, 3 Leigh 103; Deane v. Hansford, 9 Leigh 253; Nowlin v. Winfree, 8 Gratt. 346. Which latter cases have, it is believed, been more in conformity with the Rnglish cases and the earlier cases in this court. The precise question decided in Self v. Tune did not arise in any of the latter cases; though the general principles on which the latter cases proceed may not be precisely in conformity with the doctrine of that case.
*In Deane v. Hansford, 9 Leigh 253, Judges Parker and Brockenbrough observed, that as Timberlake v. Graves was followed in quick sucession by the other cases named, they should be considered as settling the law in cases exactly resembling them; more especially as in devises made since the act of 1819 took effect, the statutory rule will prevail. But Brockenbrough said that if Timberlake v. Graves stood alone, he would have concurred in overruling it. In conformity with this suggestion, perhaps if Self v. Tune stood alone, it should be recognized as ruling a case exactly resembling it, although it might be considered as having been erroneously decided. But besides being in some degree shaken by the general doctrines advanced in the later cases, the principle of the case is, as it seems to me, in conflict with the two cases of Goodwin v. Taylor, 2 Wash. 74, and Wilkins v. Taylor, 5 Call 150. The testator, in the first case, gave to his daughter the interest of a sum of money for life; at her death he gave the interest one-fourth to each of' his grand children, and at their decease, the principal and interest to be disposed of by them to their heirs, “in such proportions” as they by their wills respectively may direct: and in case of the death of Sarah (one of said grand children) *537 without issue, her part was bequeathed over. There is not an express gift to the grand children for life, but the interest alone was given to them, with the power to dispose by will: and in regard to Sarah, there was a gift over if she died without issue. ,The will gave power to dispose of the subject to their heirs in such proportions as they by their wills may direct. The court held that the grand children took the whole estate. In the case of Wilkins v. Taylor, which arose on the same will, in reference to the share of Sarah, it was held to be a limitation after an indefinite failure of issue, and void. The power to dispose of the principal to their heirs *in such proportions as they by their wills might direct, tends more strongly to indicate that the testator intended that the heirs should not take in the regular course of descent, than the words “equally to be divided” in the present will. On the contrary, the words “equally to be divided” would, under our law, rather indicate that they should take as heirs. I do not think that the will in this case shows that the testator used the words “heirs lawfully begotten,” in any other than their ordinary sense. That he designed “children” by the use of these words, is entirely conjectural; and under a certain state of facts, such a construction would have been more likely to violate than to subserve the intention of the testator. I also think that the authorities in this court are not in harmony with each other, and that it would be more in conformity with the spirit of the later as well as of the earlier cases in this court, and the true doctrine in regard to the rule in question, to hold that the superadded expressions do not indicate clearly an intention to use the terms as descriptive of any other class than the heirs. I think therefore that the decree should be affirmed.
MONCURE and I/EE, Js., concurred in the opinion of Allen, J.
DANIEE and SAMUEES, Js., dissented.
Decree affirmed.